PATRICIA A. WASHIENKO (BBO# 641615)
pwashienko@washienkolaw.com
ALLISON L. WILLIARD (BBO# 692652)
awilliard@ washienkolaw.com
WASHIENKO LAW GROUP, LLC
211 Congress Street, Suite 720
Boston, Massachusetts 02110
Telephone:  617-723-0008
Fax:  617-723-0009

Attorneys for Plaintiff Katherine Merrill Dunham

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHERINE MERRILL DUNHAM, )<br><br>        Plaintiff, )<br><br>v. )<br><br>WBZ-TV, COLUMBIA BROADCASTING )<br>SYSTEM, INC., PARAMOUNT GLOBAL, INC., )<br>JASON MIKELL, COURTNEY COLE, )<br>JUSTIN DRAPER, and MICHAEL RODERICK, )<br><br>        Defendants. ) | Civil Action No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

Plaintiff Katharine Merrill Dunham ("Kate Merrill") is White and female. She is (was) also

a highly regarded and respected newscaster. A native of Carlisle, Massachusetts, Ms. Merrill began

her broadcasting career in1996. She joined WBZ-TV as a reporter in 2004 and, in 2017, was named

co-anchor for WBZ This Morning and WBZ News at Noon. During her time at WBZ-TV, Ms.

Merrill "covered every big story in Boston, from the 2013 Marathon bombings, and the 2004

Democratic National Convention, to the 2004 Red Sox World Series win and several Patriots Super

Bowls, live from the field."[1] She earned Emmy awards, an extraordinary reputation and a heretofore spotless record. She was beloved by viewers and colleagues.

In the early 2020s, WBZ-TV, adopted diversity, equity and inclusion policies imposed by its parent corporations Columbia Broadcasting System and Paramount Global, Inc. In 2024, WBZ-TV exploited such policies and took career-ending action against Ms. Merrill to advance a DEI agenda.

As a result, Ms. Merrill brings this action (a) against WBZ-TV, Columbia Broadcasting System, Paramount Global, Inc., and Justin Draper seeking redress for unlawful discrimination on the basis of race, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(k) and the Massachusetts Fair Employment Practices Act, G.L. c. 151B (Counts I-II); (b) against WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., and Justin Draper seeking redress for unlawful discrimination on the basis of gender, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(k) and the Massachusetts Fair Employment Practices Act, G.L. c. 151B (Count III); (c) against WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., and Michael Roderick seeking redress for failure adequately to investigate Plaintiff's claims of discrimination, in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B (Count IV); (d) against Justin Draper, WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., seeking redress for defamation (Count V); (e) against Draper, Jason Mikell, Courtney Cole and Michael Roderick seeking redress for tortious interference (Count VI); and (f) against WBZ-TV, Columbia Broadcasting System, Inc.,

---

[1]    https://www.bostonglobe.com/2024/06/03/metro/kate-merrill-abruptly-leaves-wbz-tv-after-more-than-20-years/

Paramount Global, Inc. for failure timely to pay wages in violation of G.L. c. 149, sec. 148 (Count VII).

## PARTIES

1.    Katherine Merrill Dunham ("Plaintiff" or "Ms. Merrill") is a resident of Concord, Middlesex County, Massachusetts.

2.    Defendant WBZ-TV (hereinafter "WBZ") is a television station with a principal place of business at 1170 Soldiers Field Road, Boston, Suffolk County, Massachusetts. Upon information and belief, WBZ is owned and operated by CBS News & Stations division of Columbia Broadcasting System, Inc. Also, upon information and belief, WBZ employs over 100 employees.

3.    Upon information and belief, Defendant Columbia Broadcasting System, Inc. (hereinafter "CBS") is a commercial broadcast television and radio network of the CBS Entertainment Group division of Paramount Global. Upon information and belief, CBS has a principal place of business at 51 West 52nd Street, Manhattan, New York.  Upon information and belief, CBS employs over 300 employees.

4.    Defendant Paramount Global (hereinafter "Paramount") is a for-profit Delaware corporation with a principal place of business at 1633 Broadway, New York, New York. Upon information and belief, Paramount employs over 300 employees.

5.    Upon information and belief, WBZ is a subsidiary of CBS., which exercises control over it. Also, upon information and belief, WBZ and CBS are subsidiaries of Paramount, which exercises control over both of them. All three entities were Ms. Merrill's employer(s).

6.    Defendant Jason Mikell is, upon information and belief, a resident of Boston, Suffolk County, Massachusetts.  Also, upon information and belief, Defendant Mikell has been employed by Defendants WBZ / CBS / Paramount since approximately September 2023.

7.    Defendant Courtney Cole is, upon information and belief, a resident of Boston, Suffolk County, Massachusetts.  Also, upon information and belief, Defendant Cole has been employed by Defendants WBZ / CBS / Paramount since approximately July 2022.

8.    Defendant Justin Draper was, at times relevant hereto, the President and General Manager of WBZ and Ms. Merrill's direct supervisor. At times relevant hereto, he exercised management authority over Plaintiff.

9.    Defendant Michael Roderick is, upon information and belief, is Vice President, Employee Relations at Paramount, in which capacity he conducts (conducted) investigations into, among other things, complaints of discrimination filed at WBZ and CBS.

## JURISDICTION AND VENUE

10.    On or about September 16, 2024, Ms. Merrill filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") asserting claims of unlawful discrimination and retaliation against Defendants WBZ, CBS, Paramount, Draper and Roderick.

11.    By letter dated July 2, 2025, a true and accurate copy of which is attached hereto as **Exhibit A**, Ms. Merrill submitted a Request to Withdraw her Charge of Discrimination from the MCAD and EEOC in order to file a private cause of action in civil court.

12.    Ms. Merrill has met all jurisdictional prerequisites to a civil action.

13.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States, and pendent jurisdiction

for the related claims arising under state law. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

### *Ms. Merrill's Employment History And Record of Exemplary Performance*

14. Ms. Merrill began her broadcasting career in 1996, at Fox affiliate WICZ-TV in Binghamton, New York. She then served as an anchor/reporter at ABC affiliate WKRN-TV in Nashville, where she earned her first Emmy Award for her role covering the tornado that hit Tennessee in 1999. Ms. Merrill left WKRN in 2003 and served as a reporter at WNBC-TV in New York until 2004.

15. In 2004, Ms. Merrill joined WBZ as a reporter in Boston, Massachusetts. During her time as a reporter at WBZ, Ms. Merrill covered most of the biggest stories in Boston news: the 2004 Democratic National Convention in Boston; the 2004 Red Sox World Series win; several Patriots Super Bowls, often live from the field; and the 2013 Marathon bombings, among others. Ms. Merrill broke dozens if not hundreds of exclusive stories. While at WBZ, she earned three additional Emmy Awards.

16. WBZ promoted Ms. Merrill from reporter to anchor and then to anchor of more important newscasts and, in 2016, made her the lead 11 p.m. reporter and weekend anchor. In 2017, WBZ named Ms. Merrill co-anchor for WBZ This Morning and WBZ News at Noon.

17. For more than 20 years, Ms. Merrill worked closely, virtually daily, with colleagues regardless of race (or any other protected category). She opened the doors to her home to and befriended colleagues, regardless of race (or any protected category), and mentored any person – regardless of race (or any protected category) – who reached out and asked for her assistance trying to establish themselves in broadcast news. (Photographs of Ms.

Merrill with (a) Diane King Hall, an award-winning Black broadcaster known for her insightful reporting in the dynamic world of business, economics and geopolitics, whom Ms. Merrill befriended and with whom she worked closely at WBZ, and (b) Levan Reid, a Black sportscaster and reporter, whom Ms. Merrill befriended and with whom she worked closely at WBZ – exemplars of her relationships with Black colleagues – are attached at **Exhibit B**.)

18. Throughout her career, including throughout her tenure at WBZ, Ms. Merrill intentionally advocated for and produced hundreds of segments highlighting many of the significant contributions persons of color make in local communities.

19. Prior to spring 2024, at no point in her lengthy career as a public figure (in fact, at no point in her life) had Ms. Merrill ever been accused of racism or exhibiting microaggressions or unconscious bias. To the contrary, she has educated herself on issues of systemic racism, microaggressions and unconscious bias. She is anti-racist.

### *Diversity, Equity and Inclusion Mandate of Paramount, CBS & WBZ*

20. Upon information and belief, in 2019, Whitney Davis, a veteran of CBS news and entertainment divisions, publicly alleged that CBS had a "White problem," and other persons of color came forward to report a toxic, racist environment.[2] Upon information and belief, CBS acted quickly in response and implemented a number of changes to increase diversity. For example:

    a. In 2020, CBS Entertainment Group set a goal to ensure that by "the 2022-2023 broadcast season: half of all writers will be nonwhite."[3]

---

[2] Whitney Davis, *"CBS Has a White Problem": Executive Blasts Toxic Culture at Network in Explosive Letter*, VARIETY (April 23, 2019), available at https://variety.com/2019/tv/news/cbs-has-a-white-problem-whitney-davis-explains-decision-1203194484/

[3] Christie D'Zurilla, *CBS Announces Diversity Overhaul of Writers Rooms and Script-Development Program*, LOS ANGELES TIMES (Jul. 13, 2020), https://lat.ms/3Sj1t4O.

b. CBS Entertainment Group adopted an initiative requiring 50% of the cast members on their reality shows to be Black, Indigenous, or People of Color ("BIPOC").[4]

c. The CEO of CBS Entertainment Group, George Cheeks, "set a goal that all writers' rooms on the network's primetime series be staffed 40 percent BIPOC in the 2021-22 season According to a 2022 article quoting Mr. Cheeks, 17 out of 21 shows hit or exceeded that target.[5]

21. On or about July 22, 2021, shortly after the conclusion of the third-party investigation into issues of racism and sexism at CBS, CBS Entertainment Group CEO George Cheeks acknowledged that "there are clear themes that we need to address moving forward: **our diversity, equity and inclusion standards need to be a top priority for leadership in every corner of our Station's business; our workplace culture needs to measurably improve; and, your trust needs to be restored with your CBS leaders**."[6] (Emphasis in original.)

22. Upon information and belief, in May 2021, CBS hired Wendy McMahon as President, CBS News and Stations.

23. Under her leadership, CBS News and Stations "prioritized diversity, equity, and inclusion initiatives, hired and promoted several women and/or people of color to serve in key roles . . . ."[7]  In short, WBZ / CBS / Paramount adopted and began to implement policies of reverse discrimination.

---

[4] Sarah Whitten, *CBS Reality Shows Must Now Have 50% Non-White Casts, Network Says*, CNBC (Nov. 9, 2020), available at https://cnb.cx/3Sihh7W.

[5] Lynette Rice, *Altered Reality*, ENTERTAINMENT WEEKLY (Feb. 2, 2022), available at https://bit.ly/3SFs3WU.

[6] Id.

[7] National Association of Broadcasters Leadership Foundation: Wendy McMahon, accessed July 28, 2025), available at https://www.nabfoundation.org/about/board/wendy-mcMahon.asp

24.    Among numerous other things:

    a.    Upon information and belief, Adrienne Roark, head of East Coast stations for CBS, including WBZ, began stating to managers and others at WBZ that the Morning Show was not diverse. She repeatedly said it was "too white," that WBZ was "the least diverse station for on air talent" and the "whitest of all their stations" (or words to that effect) and that it (*i.e.*, its personnel) had to change. Upon information and belief, Ms. Roark informed managers that she would allow only minority hires. Also, upon information and belief, a number of managers complained that Ms. Roark had handcuffed (i.e., prevented) hiring when they had no minority candidates and a qualified White candidate, whom they were not permitted to hire.

    b.    Upon information and belief, in or around June 2022, Ms. Roark and Mr. Draper, (then President and General Manager of WBZ) fired former WBZ News Director Jessi Miller, a White woman in her late 40s who had more than 20 years of experience at WBZ, and replaced her with Gerardo Lopez, a younger, Hispanic, gay man with far less experience in news and no experience in the Boston market. Mr. Lopez told Ms. Merrill on several occasions that Ms. Roark was upset with the lack of diversity on the Morning Show.

25.    The New York Post reported that in 2021, multiple employees complained about reverse discriminatory hiring and management practices at CBS. The New York Post also reported, among other things, that Ingrid Ciprian-Matthews, a Black woman and then CBS News President, supported the promotion of an African American correspondent notwithstanding that she had personally witnessed him verbally abusing a female colleague. The New York Post also reported that employees accused Ms. Ciprian-Matthews of making up phony excuses to replace a White reporter with a Black man for a plum assignment covering the aftermath of the Capitol riots. The New York Post also reported that a White job candidate claimed that Ms. Ciprian-Matthews told her it would be easier to hire her if she were a "different color" and passed her over for the role.[8]

---

[8] Alexandra Steigrad, *'Woke' CBS News president got job despite HR probe over bias accusations, sidelining white journalists: sources,* NEW YORK POST *(*Jan. 9, 2024), available at
https://nypost.com/2024/01/09/media/new-woke-boss-at-cbs-news-got-top-job-despite-hr-probe-sources/

26.    The New York Post also reported that in mid-2021, CBS's parent company, Paramount, launched an investigation into Ms. Ciprian-Matthews. According to the New York Post, Jennifer Gordon, an executive vice president of employee relations at Paramount who conducted the HR probe, cut the investigation short and failed to interview key witnesses before she concluded that Ms. Ciprian-Matthews was a merely "bad manager" with limited resources.[9]  Upon information and belief, CBS did not demote Ms. Ciprian-Matthews, nor did it terminate her employment.

27.    Rather, in August 2023, and notwithstanding CBS's lengthy investigation in 2021 into allegations of Ms. Ciprian-Matthews' discriminatory management and hiring practices, Ms. Ciprian-Matthews was promoted to CBS News President, overseeing all CBS News programs, bureaus, global newsgathering, streaming and digital editorial, as well as standards and practices, special events, politics, elections and surveys, social, the race and culture unit and CBS News Radio.

28.    In September 2023, CBS and Paramount terminated Jeff Vaughn, a White man who had for eight years served as a news anchor at CBS's Los Angeles affiliate.  Thereafter, a Black man was installed as news anchor. In July 2024, Mr. Vaughn sued CBS and Paramount in the U.S. District Court for the District of Central California, Case 2:24-cv-05570, alleging reverse race discrimination in connection with his termination in September 2023 and subsequent replacement by, Mr. Vaughn alleges, a less qualified Black man.

---

[9] Id.

### *Diversity Directives' Impact at WBZ*

29.    CBS's corporate diversity directive also played out in Boston. For example, in July 2022, WBZ hired Defendant Cole, who is Black, as an anchor and reporter, to replace Nick Giovanni – a White male – who was demoted to a full-time reporter.

30.    Also in 2022, WBZ hired Chris Tanaka, who is Japanese American male, as a co-anchor.

31.    In several conversations over the course of 2023, Mr. Lopez told Ms. Merrill that he wanted to move Ms. Merrill's co-anchor Liam Martin, a White male, off the Morning Mix 9am show and replace him with Defendant Cole because the show was not diverse enough. Mr. Lopez began having Defendant Cole substitute on the morning show instead of Breana Pitts, a White anchor who had been the fill-in for years and was much more experienced than Defendant Cole. Defendant Cole was also selected to fill-in instead of / ahead of weekend Morning Anchor Anna Meiler, who is White, had a longer tenure at WBZ, and also was a more experienced anchor.

32.    Throughout 2022 and 2023, Ms. Merrill became concerned that WBZ was not providing sufficient support to her less experienced and recently hired colleagues, a number of whom were persons of color.

33.    As a result, on or about March 31, 2023, Ms. Merrill met with Lori Orlando, Senior Vice President of Talent for CBS News, to report her concerns. Ms. Merrill informed Ms. Orlando that Mr. Lopez and Mr. Draper did not appear to be providing support to help two Black colleagues be successful: Katrina Kincaid, a junior reporter who is Black, whom Ms. Merrill suspected was about to quit her job at WBZ; and Defendant Cole, whom Ms. Merrill perceived to be struggling in her anchor role. Ms. Merrill informed Ms. Orlando that although WBZ was hiring persons of color and bringing diversity to the

station, it was failing to provide support to these new members of the team to ensure their success, and that doing so was vital for the station's success. To the best of Ms. Merrill's recollection, Ms. Orlando replied that she would attempt to persuade WBZ to provide additional support to newly hired employees (or words to that effect). Upon information and belief, notwithstanding Ms. Orlando's words, WBZ did not take any action to provide more support to Defendant Cole, Ms. Kincaid, or others of its new talent.

34.    With regard to Defendant Cole, Ms. Orlando stated she had hired her as a weekend anchor (rather than a weekday anchor) because she was not experienced enough for a full-time Monday through Friday anchor role and, in fact, was not meant to be a full-time Monday through Friday anchor.

35.    In or around June 2023, WBZ promoted Tiffany Chan (who is Asian) to the role of weekend Anchor over several other White candidates with more experience.

36.    In September 2023, WBZ hired Defendant Mikell, who is Black, as a meteorologist. Defendant Mikell, who is from southern Mississippi, informed Ms. Merrill when he joined WBZ that he was unfamiliar with the pronunciation of the names of local cities and towns and asked Ms. Merrill to assist him with pronunciation. Providing pronunciation tips is a courtesy that people in the industry extend to colleagues to help them when they relocate to a new market, and Ms. Merrill agreed.

37.    In August 2023, meteorologist Zack Green, who is White, was let go from WBZ (but made to work through October 2023 due to a staffing shortage), although he had never been warned about any performance deficiencies.

38.    Defendant Mikell, who is a less experienced television meteorologist, replaced Mr. Green when he was fired.

### *Ms. Merrill's Interactions with Defendants Mikell and Cole*

39.    When Defendant Mikell started working at WBZ, he informed Ms. Merrill that before accepting the job at WBZ, he had never even been to Boston. Because he was new to the area, Ms. Merrill offered to introduce him to friends and acquaintances in Boston.

40.    Thereafter, Ms. Merrill continued to interact warmly with Defendant Mikell. The warm tenor of their interactions is reflected in her ongoing text message exchanges with Defendant Mikell, a sample of which is set out at **Exhibit C**. (Mr. Mikell's tests are in gray; Ms. Merrill's text is in blue.)

41.    On February 22, 2024, Defendant Mikell made an inappropriate sexual innuendo about Ms. Merrill on air. Specifically, he implied that Ms. Merrill and her co-anchor had sexual relations at a gazebo. Upon information and belief, Ms. Merrill's Executive Producer complained to News Director Mr. Lopez that Defendant Mikell had been inappropriate on air and showed him the videotape of the incident. Mr. Lopez did nothing, however, and upon information and belief Defendant Mikell was not disciplined for his sexually charged remark about Ms. Merrill.

42.    Despite Ms. Merrill's dismay at Defendant Mikell's inappropriate sexually charged comment, she continued to support him in his new role. For example, when Terry Eliasen (WBZ's Weather Executive Producer) told Ms. Merrill he was concerned about Defendant Mikell's performance and asked for Ms. Merrill's help to support him (Mikell), she agreed to do so. Screenshots of several of Ms. Merrill's text messages with Mr. Eliasen regarding her ongoing support of Defendant Mikell are attached as **Exhibit D**. (In Exhibit D, Mr. Eliasen's texts are in gray; Ms. Merrill's texts are in blue.) Ms. Merrill's text messages with Mr. Eliasen included a screenshot of her text thread Defendant Mikell telling him

that he was doing a great job. That screenshot of Ms. Merrill's text exchange with Mr. Mikell is set out below. (In the screenshot, below, Ms. Merrill's text is in blue; Mr. Mikell's is in gray.)



43.    Near the end of March 2024, Ms. Kincaid quit her job at WBZ. Ms. Merrill is reliably informed and believes that Mr. Draper expressed relief to an executive producer that she was no longer on the morning show, because she had struggled so much. Later, Ms. Merrill was reliably informed that at her exit interview, Ms. Kincaid expressed disappointment that Ms. Merrill had not mentored her.

44.    Meanwhile, Ms. Merrill continued to perform her job well, and her ratings were positive. She also maintained warm relationships with her colleagues.

45.    On April 3, 2024, during a commercial break, Ms. Merrill privately (via text message) corrected Defendant Mikell's on-air pronunciation of a local town name (Concord) during his weather segment, as he had requested. (A screenshot of Ms. Merrill's text to Defendant Mikell re: his pronunciation is attached at **Exhibit E**. Ms. Merrill's texts are in blue; Mr. Mikell's are in gray.))

46.  Notwithstanding Defendant Mikell's request for Ms. Merrill's assistance with pronunciation of local town names, and the fact that Ms. Merrill texted him privately regarding his pronunciation of the name of the town Concord, Defendant Mikell immediately confronted Ms. Merrill, loudly yelling at her on the studio floor and asserting that she was being critical of him. His tone was aggressive and unprofessional. Ms. Merrill immediately lodged a complaint with WBZ's Human Resources department.

47.  Jordyn Jagolinzer, the fill-in traffic reporter on April 3, 2024 (the day Defendant Mikell publicly confronted Ms. Merrill), personally observed Mr. Mikell's conduct toward Ms. Merrill that day. Ms. Jagolinzer contemporaneously texted Breana Pitts, who is also on WBZ's Morning Team, about Defendant Mikell's behavior, remarking: "She [Kate] texted him I guess like how to pronounce [C]oncord cause he said it wrong[.] [H]e literally walks over and freaks out[.]" and "Literally I had no idea these texts were going on[.] Jason just gets upset and like flips out, like so unprofessional." and "I was like is he really starting an argument in front of everyone – mic'd up. . ." (Screenshots of Ms. Jagolinzer's text thread with Ms. Pitts regarding the confrontation and Mr. Mikell's behavior toward them is attached hereto at **Exhibit F**. Ms. Jagolinzer's texts are in gray; Ms. Pitts's texts are in blue.)

48.  WBZ, CBS and Paramount took no action to conduct an investigation into Ms. Merrill's complaint about Mr. Mikell's aggressive confrontation and threatening treatment of her, nor did they investigate the previous complaints lodged by Ms. Merrill's colleagues about Mr. Mikell's sexually charged comment on air about Ms. Merrill.

49.  On April 10, 2024 (i.e., a week after Ms. Merrill had reported to HR Defendant Mikell's behavior aggressively, loudly, and publicly confronting her on the studio floor on April 3,

2024), Michael Roderick, Vice President, Employee Relations at Paramount, informed Ms. Merrill that an investigation was being conducted into allegations that she treated coworkers differently because of their race. Defendant Roderick informed Ms. Merrill that Defendant Mikell and Defendant Cole simultaneously raised complaints about her directly to the Legal Department at Paramount, bypassing entirely WBZ's local employee relations teams' complaint and investigation mechanism.

50.     Ms. Merrill's complaint about Defendant Mikell's aggressive confrontation had been cast aside, as had Ms. Merrill's Executive Producer's earlier complaint to News Director Mr. Lopez about Defendant Mikell's inappropriate on-air sexually charged innuendo about her.

51.     Based on Defendant Roderick's questions to Ms. Merrill, Ms. Merrill was able to determine that Defendant Mikell had complained that Ms. Merrill:

    a.  had said, upon welcoming Defendant Mikell to Boston, that he would "find his people" here (i.e., create a community of friends), a comment he apparently interpreted as racist;

    b.  was "always" critical of him, notwithstanding that Defendant Mikell had asked Ms. Merrill to correct his pronunciations of the names of local towns (Defendant Roderick did not identify any examples of any other purported criticism Ms. Merrill allegedly directed at Defendant Mikell);

    c.  did not ask him about his weekends, an omission he also apparently attributed to his race notwithstanding the fact that, due to the demands on Ms. Merrill's time and extremely busy schedule in the mornings, she did not ask any colleagues about their weekends during that time;

    d.  said, in response to a prompt from producers Aileen Pollard and Victoria Love to Ms. Merrill and her co-anchors to make a "Dirty Job" reference in connection with banter about Mr. Mikell's "Do Your Job" segment, that he could work as a garbage collector (while Mr. Tanaka, Ms. Merrill's co-anchor, said that Mr. Mikell could pick strawberries).

52.    Ms. Merrill vehemently challenged the validity of Defendant Mikell's allegations and denied (and denies) any of her actions, inactions, or comments were as described or motivated by overt racism or unconscious bias.

53.    Based on the falsity and/or and misleading nature of Defendant Mikell's allegations, Defendant Mikell acted with malice and/or improper motive in lodging a complaint against Ms. Merrill.

54.    Based on other of Defendant Roderick's questions to Ms. Merrill, Ms. Merrill was able to determine that Defendant Cole had complained that, on one occasion, Ms. Merrill stated to her that she used to work in Nashville and Defendant Cole should go there because she could become the main anchor there, which comment Defendant Cole apparently interpreted as a suggestion that she go to Nashville because it would be a better racial fit for Defendant Cole (who is Black) rather than a comment about career opportunities and how much she (Ms. Merrill) enjoyed Nashville.

55.    Ms. Merrill vehemently challenged the validity of Defendant Cole's allegations and denied (and denies) any of her actions, inactions, or comments were as described or motivated by overt racism or unconscious bias.

56.    Based on the falsity and/or and misleading nature of Defendant Cole's allegations, Defendant Cole acted with malice and/or improper motive in lodging a complaint against Ms. Merrill.

57.    Defendant Roderick also informed Ms. Merrill of other allegations against her: that she rolled her eyes when talking to people of color and that she did not greet people of color when they entered a room.

58. Ms. Merrill vehemently challenged the validity of these allegations and denied (and denies) any of her actions, inactions, or comments were as described or motivated by overt racism or unconscious bias.

59. To aid his investigation, Ms. Merrill gave to Defendant Roderick the names of witnesses to Defendant Mikell's loud, public confrontation of her on the studio floor on April 3, 2024, including Ms. Jagolinzer.

60. Defendant Roderick chose not to speak with Ms. Jagolinzer nor did anyone else at WBZ/CBS/Paramount. As a result, Defendant Roderick, WBZ / CBS / Paramount failed to secure contemporaneous evidence corroborating Ms. Merrill's complaint that Defendant Mikell had confronted her on the studio floor.

61. Given Defendant Roderick's failure to interview one of the percipient witness Ms. Merrill identified in connection with his investigation into Ms. Merrill, among other things, Defendant Roderick's investigation was not adequate, thorough, or impartial.

62. Ms. Merrill also urged Defendant Roderick to speak with her colleagues of color with whom she had worked closely for decades and who knew her well (in contrast to Defendant Mikell, who had known Ms. Merrill for seven months and Defendant Cole, who had known Ms. Merrill for approximately one and one-half years), including Morning Reporter Levan Reid, for whom Ms. Merrill lobbied WBZ to have join the Morning Show and, later, to be made a bigger part of the show, to feature in promotional pieces, and to have co-anchor with her; WBZ's Morning Tech Director Tisha Wilson; and Johnny Green, Jr., WBZ's former News Director, who now serves as President and General Manager of CBS New York, and has been one of Ms. Merrill's dearest work friends and closest confidants for close to a decade.

63.     Defendant Roderick chose not to speak with Mr. Reid or Mr. Green, Jr., in connection with his investigation into Ms. Merrill, nor did anyone else at WBZ/CBS/Paramount.

64.     Given his failure to interview these additional witnesses Ms. Merrill identified, among other things, Defendant Roderick's investigation was not adequate, thorough, or impartial.

65.     On Friday, May 17, 2024, Defendant Roderick informed Ms. Merrill that he had corroborated the complaints against her and was not able to corroborate the complaint she lodged against Defendant Mikell.  Defendant Roderick did not give Ms. Merrill a copy of his investigation report (if any exists).

66.     Defendant Draper then immediately issued a Written Warning to Ms. Merrill. The Written Warning stated that Defendant Roderick had concluded that Ms. Merrill's behavior was grounded in microaggressions or unconscious bias and created a very unwelcoming work environment.  The Written Warning stated that Ms. Merrill would be required to complete unconscious bias training and warned that should she engage in any similar conduct in the future, she would be subject to further disciplinary action up to and including termination. The Written Warning also stated that the matter was considered closed.

67.     The Written Warning also stated that Defendant Roderick was of the opinion that Ms. Merrill falsely, and only after being informed on April 10, 2024 that she was being investigated, complained about Defendant Mikell's behavior, with the intent unfairly to portray Defendant Mikell in an unflattering and disparaging way despite the incident not calling for that depiction, notwithstanding that Ms. Merrill had reported the incident immediately after it occurred on April 3, 2024.

68.     Given that Defendant Roderick's gratuitous opinion about the legitimacy and motivation of Ms. Merrill's complaint was premised on a timeline the inaccuracy of which could

easily have been determined by a cursory review of the date of Ms. Merrill's complaint about Defendant Mikell's confrontational behavior, his investigation was not adequate, thorough, or impartial.

69.    The Written Warning also cited statements that Ms. Merrill allegedly made to Defendant Roderick in his interview of her, which statements Ms. Merrill either did not say or that Defendant Roderick misrepresented, mischaracterized and/or twisted. For example:

a.    The Written Warning cited as evidence in support of Defendant Roderick's conclusion that Ms. Merrill's behavior was grounded in microaggression and unconscious bias that, in denying Defendant Cole's allegation that Ms. Merrill's comment about Nashville was racist, Ms. Merrill stated to Defendant Roderick that Nashville is not a majority minority city, so Defendant Cole's allegation did not make any sense. Ms. Merrill's conscious of terms used to identify demographics of locations does not make her racist.

b.    The Written Warning also cited as evidence in support of Defendant Roderick's conclusion that, in questioning her about the "Dirty Jobs" segment, Ms. Merrill said, "all my garbage collectors are white," (or words to that effect), which assertion is categorically false. Ms. Merrill stated that she did not understand how her on-air comment was a racist statement when she does not see, understand, or expect that a garbage collection job is or should be performed by persons of one race or another. The fact that she then asked Defendant Roderick how her statement could be construed as having anything to do with race does not make her a racist.

70.   Given that Defendant Roderick's conclusion that Ms. Merrill also rested, at least in part, on statements that Ms. Merrill allegedly made to Defendant Roderick, which statements Ms. Merrill either did not say or that Defendant Roderick misrepresented, mischaracterized and/or twisted, his investigation was not adequate, thorough, or impartial.

71.   Ms. Merrill was later advised by close professional colleagues and senior leaders at SAG-AFTRA, her union, that the Written Warning and requirement that she undertake bias training were consistent with the discipline CBS imposed on others in purportedly similar situations.

72.   Notwithstanding that the Written Warning stated that the matter was considered closed, however, Defendant Draper then immediately informed Ms. Merrill that he would be demoting her from her role as co-anchor of the Weekday Morning Show to working weekend nights, stating that decision "had been in the works for some time" (or words to that effect). That explanation makes no sense, however, for a number of reasons.

   a.   First, in August 2023, after meteorologist Zack Green was terminated, Defendant Draper told Ms. Merrill he valued her and confirmed her job was safe.

   b.   Second, at the end of March 2024, after Ms. Merrill's co-anchor Liam Martin left, Defendant Draper again confirmed her job was safe.

   c.   Third, also in March 2024, WBZ aired a promotional piece about Ms. Merrill's twentieth anniversary at WBZ, an action unlikely for an organization planning to demote someone.

   d.   Fourth, Ms. Merrill is aware that at the time of her demotion, a number of additional promotional pieces featuring her were in the works.

   e.   Fifth, several of Ms. Merrill's extensive industry contacts (including specifically in CBS management) contradicted Defendant Draper's assertion that her demotion was "in the works for some time," as no changes in WBZ's Morning Show had been planned, discussed, or even rumored, either at WBZ or at CBS headquarters in New York.

      f.   Sixth, WBZ had never counseled Ms. Merrill about her performance.

73. Later, counsel for WBZ stated to counsel for Ms. Merrill that the findings of Defendant Roderick's investigation had in fact played a role in the decision to remove Ms. Merrill from the Morning Show.

74. Ms. Merrill did not work on Monday, May 20, 2024 (her next regularly scheduled morning time slot), because SAG-AFTRA union rules mandated that she be given two weeks' notice in advance of any schedule change.

75. On Monday, May 20, 2024, Defendant Draper, in two separate staff meetings, publicly announced to all WBZ personnel – many of whom were aware of the investigation into Ms. Merrill, as rumors about it had been circulating (not at her hand) – that Ms. Merrill had been demoted.

76. Demoting Ms. Merrill in the context of the investigation her sent the false message to her professional colleagues that she had engaged in serious wrongdoing. (An exemplar post showing comments reflecting same are set out at **Exhibit G**.)

77. Defendant Draper unnecessarily broadly announced Ms. Merrill's demotion, humiliating her.  In so doing, Defendant Draper acted with malice and ill will.

78. To the best of Ms. Merrill's memory, Defendant Draper had not similarly broadly announced the demotions of any male anchors at WBZ.

79. Upon information and belief, and as a number of Ms. Merrill's professional colleagues and senior leaders at SAG-AFTRA informed Ms. Merrill, by demoting her, Defendant Draper and Defendants WBZ/CBS/Paramount treated her significantly more harshly than Defendant Draper and WBZ/CBS/Paramount had treated men at WBZ who had been

accused of or been found to have engaged in wrongdoing. Specifically, and upon information and belief:

    a. Defendant Mikell (who is a Black male) was not disciplined for making an inappropriate sexually-charged comment about Ms. Merrill on air, nor for publicly and aggressively confronting her on the studio floor;

    b. Mr. Tanaka (who is an Asian male) was not demoted for the remark he made on air, making a "Dirty Job" reference that was laden with racist undertones in on-air banter about Defendant Mikell's "Do Your Job" segment; and

    c. a Reporter (who is a Black male) was not disciplined notwithstanding that, as a video recording evidences, he physically threw Carlos Patricio against a wall at WBZ.

80. Upon information and belief, and as a number of Ms. Merrill's professional colleagues and senior leaders at SAG-AFTRA also informed her, WBZ/CBS/Paramount demoted Ms. Merrill to make an example of her, to attempt to make the point that CBS now took seriously complaints of racism allegedly perpetrated by White employees and was (is) not a racist organization.

81. Ms. Merrill was advised by professional colleagues and senior leaders at SAG-AFTRA that the demotion constituted "career sabotage" from which her career would never recover – i.e., that the demotion was career ending.

82. Because of the catastrophic damage a demotion would have caused her career, especially in the context of allegations that she was racist, on May 24, 2024, Ms. Merrill gave notice of constructive discharge resignation, effective immediately.

83. As a result of Ms. Merrill's demotion (and subsequent separation from WBZ), Defendant Cole's role on WBZ expanded.

84. Ms. Merrill's employment agreement with WBZ expires, by its terms on June 1, 2025. It contains a non-competition provision. She was therefore unable to work in her field until after June 1, 2025.  As a result, Ms. Merrill has suffered significant financial losses.

85. Because of the manner in which Defendant Roderick and Defendants WBZ/CBS/Paramount investigated the complaint against Ms. Merrill and Defendant Draper announced Ms. Merrill's demotion, Ms. Merrill has suffered significant reputational harm.

86. After Ms. Merrill's separation, WBZ / CBS / Paramount failed timely to pay Ms. Merrill for her accrued, unused vacation due and owing. To date, Defendants WBZ / CBS / Paramount still have not paid Ms. Merrill for her accrued, unused vacation due and owing.

<u>**COUNT I**</u>
<u>**UNLAWFUL DISCRIMINATION ON THE BASIS OF GENDER / SEX**</u>
<u>**IN VIOLATION OF G.L. c. 151B and TITLE VII OF THE CIVIL RIGHTS ACT OF**</u>
<u>**1964, 42 U.S.C. § 2000e-1(k)**</u>
<u>**(Against Defendants WBZ, CBS, Paramount and Draper)**</u>

87. Ms. Merrill re-alleges paragraphs 1 through 86 above and further alleges:

88. By their actions described above, including but not limited to subjecting her to disparate treatment compared to men in the imposition of discipline, Defendants Draper, WBZ, CBS and Paramount discriminated against Ms. Merrill on the basis of her gender.

89. By their actions described above, including but not limited to subjecting her to disparate treatment compared to men in announcing her demotion, Defendants Draper, WBZ, CBS and Paramount discriminated against Ms. Merrill on the basis of her gender.

90. As a direct and proximate result of the actions of the Defendants Draper, WBZ, CBS and Paramount, Ms. Merrill has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community

standing, and emotional distress and mental suffering, and other damages in an amount to be determined at trial.

## COUNT II
## UNLAWFUL DISCRIMINATION ON THE BASIS OF RACE
## IN VIOLATION OF G.L. c. 151B and TITLE VII OF THE CIVIL RIGHTS ACT OF
## 1964, 42 U.S.C. § 2000e-1(k)
## (Against Defendants WBZ, CBS, Paramount and Draper)

91.    Ms. Merrill re-alleges paragraphs 1 through 90 above and further alleges:

92.    By their actions described above, including but not limited to subjecting her to disparate treatment compared to persons of color in the imposition of discipline, Defendants Draper, WBZ, CBS and Paramount discriminated against Ms. Merrill on the basis of her race.

93.    By their actions described above, including but not limited to subjecting her to disparate treatment compared to men in announcing her demotion, Defendants Draper, WBZ, CBS and Paramount discriminated against Ms. Merrill on the basis of her gender.

94.    As a direct and proximate result of the actions of the Defendants Draper, WBZ, CBS and Paramount, Ms. Merrill has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering, and other damages in an amount to be determined at trial.

## COUNT III
## FAILURE ADEQUATELY TO INVESTIGATE IN VIOLATION OF G.L. c. 151B
## (Against Defendants WBZ, CBS, Paramount, Draper and Roderick)

95.    Ms. Merrill re-alleges paragraphs 1 through 94 above and further alleges:

96.    Defendants WBZ/CBS/Paramount, Draper and Roderick had a legal obligation under G.L. c. 151B adequately to investigate Ms. Merrill's complaint of discrimination against

Defendant Mikell, and each was required to be prompt, thorough, and neither deferential to those accused of discrimination nor intimidating to Ms. Merrill in an investigation.

97. Defendants WBZ/CBS/Paramount, Draper and Roderick each breached this obligation by failing to conduct an unbiased, thorough investigation.

98. By their actions described above, including but not limited to their disparate / inadequate investigation into Ms. Merrill's complaint about Defendant Mikell, Defendants WBZ/CBS/Paramount, Draper and Roderick interfered with Ms. Merrill's rights granted by G.L. c. 151B to employment free of unlawful discrimination and/or retaliation.

99. The actions of Defendants WBZ/CBS/Paramount, Draper and Roderick constitute a violation of G.L. c. 151B § 4(4A).

100. Defendants WBZ/CBS/Paramount, Draper and Roderick further had a legal obligation under G.L. c. 151B to take steps reasonably calculated to eliminate or ameliorate the effects of discriminatory actions and to deter future discrimination and retaliation.

101. Defendants WBZ/CBS/Paramount, Draper and Roderick each breached this obligation by failing to take steps reasonably calculated to eliminate or at least ameliorate the effects of discriminatory actions and to deter future discrimination and retaliation.

102. The actions of the Defendants as set forth above constitute unlawful actions against Ms. Merrill in violation of G.L. c. 151B.

103. As a direct and proximate result of the actions of the Defendants WBZ/CBS/Paramount, Draper and Roderick, Ms. Merrill has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering, and other damages in an amount to be determined at trial.

**COUNT IV**
**DEFAMATION**
**(Against Defendants WBZ, CBS, Paramount and Draper)**

104.    Ms. Merrill re-alleges paragraphs 1 through 103 above and further alleges:

105.    By their actions in demoting and publicly announcing the demotion of Ms. Merrill immediately at the conclusion of an investigation into allegations that she had engaged in discriminatory behavior, Defendants WBZ, CBS, Paramount, and Draper made false statements that Ms. Merrill had engaged in serious wrongdoing, harming Ms. Merrill in the eyes of her professional community and significantly damaging Ms. Merrill's personal and professional reputation.

106.    Defendant Draper published the announcement of Ms. Merrill's demotion unnecessarily broadly. In doing so, he also published the announcement of Ms. Merrill's demotion differently than he treated her male peers. By these actions, Defendant Draper acted with malice and ill will.

107.    As a direct and proximate result of the actions of the Defendants WBZ, CBS, Paramount, and Draper, Ms. Merrill has suffered and continues to suffer damages including but not limited to loss of income, loss of personal and professional reputation, loss of community standing, and emotional distress and mental suffering, and other damages in an amount to be determined at trial.

**COUNT V**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONS**
**(Against Defendants Draper, Roderick, Mikell and Cole)**

108.    Ms. Merrill re-alleges paragraphs 1 through 107 above and further alleges:

109.    Ms. Merrill had advantageous business relationships with Defendants WBZ, CBS and Paramount.

110.    Upon information and belief, Defendants Mikell and Cole knew of Ms. Merrill's advantageous business relationships with Defendants WBZ, CBS and Paramount.

111.    Upon information and belief, Defendants Mikell and Cole acted with malice and/or improper motive when they alleged Ms. Merrill discriminated against them, and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount.

112.    Defendants Mikell and Cole thereby also interfered with Ms. Merrill's potential advantageous relationships including but not limited to with other television stations.

113.    Upon information and belief, Defendant Roderick knew of Ms. Merrill's advantageous business relationships with Defendants WBZ, CBS and Paramount.

114.    Upon information and belief, Defendant Roderick acted with malice and/or improper motive in the conduct of his investigation, and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount.

115.    Defendant Roderick thereby also interfered with Ms. Merrill's potential advantageous relationships including but not limited to with other television stations.

116.    Upon information and belief, Defendant Draper knew of Ms. Merrill's advantageous business relationships with Defendants WBZ, CBS and Paramount.

117.    Upon information and belief, Defendant Draper acted with malice and/or improper motive in his imposition of disparate discipline against Ms. Merrill compared to others outside her protected classes, and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount.

118.    Defendant Draper also thereby interfered with Ms. Merrill's potential advantageous relationships including but not limited to with other television stations.

119.    As a direct and proximate result of the conduct of Defendants Draper, Roderick, Mikell and Cole, Ms. Merrill has suffered and continues to suffer economic harm, severe emotional distress, and other damages in an amount to be determined at trial.

**COUNT VI**
**UNTIMELY PAYMENT OF WAGES – G.L. c. 149, sec. 148**
**(Against Defendants WBZ, CBS and Paramount)**

120.    Ms. Merrill re-alleges paragraphs 1 through 119 above and further alleges:

121.    After Ms. Merrill's separation, WBZ / CBS / Paramount failed timely to pay Ms. Merrill for 20 days of accrued, unused vacation due and owing. To date, Defendants WBZ / CBS / Paramount still have not paid Ms. Merrill for the 20 days accrued, unused vacation due and owing as of the date of her separation.

122.    As a direct and proximate result of the conduct of WBZ, CBS and Paramount has suffered and continues to suffer economic harm and other damages in an amount to be determined at trial.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiff respectfully requests that this Court award her the following relief:

1.    Enter judgment in favor of Plaintiff against Defendants WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., and Justin Draper under Count I (Gender Discrimination in violation of G.L c. 151B and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(k)), in the amount of all damages sustained by Ms. Merrill as a result of Defendants' conduct, to be determined at trial;

2.    Enter judgment in favor of Plaintiff against Defendants WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., and Justin Draper under Count II (Race Discrimination in violation of G.L. c. 151B and Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e-1(k)), in the amount of all damages sustained Ms. Merrill as a result of Defendants' conduct, to be determined at trial;

3.  Enter judgment in favor of Plaintiff against Defendants WBZ-TV, Columbia Broadcasting System, Inc., Paramount Global, Inc., and Michael Roderick under Count III (Failure Adequately to Investigate in violation G.L. c. 151B), in the amount of all damages sustained by Ms. Merrill as a result of Defendants' conduct, to be determined at trial;

4.  Enter judgment in favor of Plaintiff against WBZ, CBS, Paramount and Draper under Count IV (Defamation) in the amount of money that will fairly compensate her for her loss of reputation and loss of career opportunities caused by Defendants' conduct, to be determined at trial; and

5.  Enter judgment in favor of Plaintiff against Defendants Mikell, Cole and Roderick under Count V (Tortious Interference) in the amount of all damages sustained by Ms. Merrill as a result of Defendants' conduct, to be determined at trial;

6.  Enter judgment in favor of Plaintiff against Defendants WBZ / CBS / Paramount (Count VI (G.L. c. 149, sec. 148) in the amount of money that will fairly compensate her for the failure of Defendants WBZ / CBS / Paramount timely to pay her for her accrued, unused vacation due and owing at the time of her separation (Count VI);

7.  Award to Plaintiff punitive damages;

8.  Award to Plaintiff her reasonable attorneys' fees and litigation costs;

9.  Award to Plaintiff pre- and post-judgment interest as required by law; and

10. Grant such other legal or equitable relief as may be deemed just and appropriate and which will make the Plaintiff whole.

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims so triable.

KATHERINE MERRILL DUNHAM,
By her attorneys,

_____
Patricia A. Washienko, BBO# 641615
pwashienko@washienkolaw.com
Allison L. Williard, BBO # 692652
awilliard@washienkolaw.com
WASHIENKO LAW GROUP LLC
211 Congress Street, Suite 720
Boston, MA  02110
p:  617.723.0008  f:  617.723.0009

Dated:  August 5, 2025

# Exhibit A



**WASHIENKO LAW GROUP LLC**
211 CONGRESS STREET | SUITE 720 | BOSTON, MA 02110
617.723.0008 PHONE | 617.723.0009 FAX | WWW.WASHIENKOLAW.COM

PATRICIA A. WASHIENKO, ESQ.
patricia@washienkolaw.com | EXT. 101

July 2, 2025

_Via Electronic Mail Only_
sabrina.drumond@mass.gov

Investigator Sabrina Drumond
Massachusetts Commission Against Discrimination
One Ashburton Place
Sixth Floor, Room 601
Boston, MA 02108

Re:     Katherine Merrill Dunham v. WBZ-TV, et al.
        MCAD Docket No. 24BEM03030
        EEOC/HUD Number: 16C-2024-02920

Dear Investigator Drumond

In connection with the above-referenced matter, enclosed herein please find for filing Complainant's request to withdraw her Charge of Discrimination filed with the Commission.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Patricia A. Washienko

PAW
Enclosure
cc:     Katherine Merrill Dunham

**COMMONWEALTH OF MASSACHUSETTS**
**COMMISSION AGAINST DISCRIMINATION**

From: Patricia Washienko, Esq.

To: Massachusetts Commission Against Discrimination
One Ashburton Place, Room 601
Boston, MA  02108

Re: Katharine Merrill Dunham v. WBZ-TV et al.

MCAD Docket Number  24BEM03030  ; EEOC No:  16C-2024-02920

Dear Commissioner:

I hereby request permission to withdraw my complaint filed with this Commission and if applicable, from the Equal Employment Opportunity Commission, for the following reason:

[✔] I wish to file a private right of action in civil court.

[ ] I have reached a satisfactory settlement with the Respondent.

[ ] I no longer intend to pursue this matter at the Commission.

Authorization for this request is indicated by the following <u>Certification of Withdrawal by Complainant</u>, **OR** <u>Certification of Authorization to Withdraw by Counsel</u>.

<u>Certification of Withdrawal by Complainant</u>

I have been advised that it is unlawful for any person or persons to threaten, intimidate, or harass me because I filed a complaint.  I have not been coerced into requesting this withdrawal.

_____
Date

_____
Complainant's signature

_____
Print Name

<u>Certification of Authorization to Withdraw by Counsel</u>

I have been authorized as Counsel of Record for the Complainant and have the authority and permission to sign for the Complainant in this matter.  I have advised the Complainant that it is unlawful for any person or persons to threaten, intimidate, or harass him/her because s/he filed a complaint.  Complainant has represented that s/he has not been coerced into requesting this withdrawal.

July 2, 2025
_____
Date

_____
Attorney signature

Patricia Washienko
_____
Print Name

# Exhibit B







# Exhibit C



**Jason** ›

Tue, Jan 2 at 4:37 AM

Just a few fly aways on your right side my friend 😌

Thank you!

Wed, Jan 31 at 7:43 AM

Kate, as I mentioned a short time ago to Liam, I truly appreciate the kindness, helpfulness, and openness during this transition to the show.

I'm not ignorant to the fact that it hasn't been easy and I like to think I've been respectful of the change these past few months. I care about each of you and certainly the show and its performance. Let's keep kicking ass. You have a hard



Jason >

Kate, as I mentioned a short time ago to Liam, I truly appreciate the kindness, helpfulness, and openness during this transition to the show.

I'm not ignorant to the fact that it hasn't been easy and I like to think I've been respectful of the change these past few months. I care about each of you and certainly the show and its performance. Let's keep kicking ass. You have a hard worker right alongside each of you every morning xoxo

Thu, Feb 29 at 9:12 AM

Because I didn't tell you today...

You nailed it today.



Jason >

respectful of the change these past few months. I care about each of you and certainly the show and its performance. Let's keep kicking ass. You have a hard worker right alongside each of you every morning xoxo

Thu, Feb 29 at 9:12 AM

Because I didn't tell you today...

You nailed it today. It was perfect. 😍 the tone, the reax was so real and genuine and great. ❤️ Well done! 👏

I knew the precise moment when I did when I glanced over at you with your smile 😊. I felt it!!!! ❤️

# Exhibit D



Terry (Weather) >

Tue, Feb 27 at 3:46 PM

Watching now.

Yeah....I emailed him a hit by hit running commentary. Covered all of that and more. Will talk with him more tomorrow

He already responded. And took it quite well. In his words..."I'll be mindful of my southernisms and weird phrases"

 thank u.

Let's keep working on him, he's not gonna be able to change completely overnight. But at least he's open to criticism.

Exactly. A little bit of coaching and help he could be great.



Terry (Weather) ›

change completely overnight.
But at least he's open to
criticism.

Exactly. A little bit of coaching
and help he could be great.
He's so nice.
He has potential to be great if
he just listens and is himself
and keeps it simple.

1. Just tell him a simple reax is
best until he's comfortable.
Keep it simple. Don't extend
the adlib to be safe.

2. No phrases no weird
sayings to be more
conversational.

3. Be himself.

Pretty much exactly what I
told him. Just relax and have a
chat. You don't need to be
overly witty or come up with
the perfect one liner



3. Be himself.

Pretty much exactly what I told him. Just relax and have a chat. You don't need to be overly witty or come up with the perfect one liner.



Tell him how bad Zack was at first. 😂
"Umbrella on your side"

Wed, Feb 28 at 6:47 AM

Way better today. Wayyyyyyy





Terry (Weather) >

I know!!! 😂

I wouldn't text that to most people. But I want to encourage him to feel comfortable

Appreciated

I talked to him, he's doing fine, and he does feel like things are getting better. He made a point that he sends out a Weather message every morning and he was hoping that from that or from you guys watching his weather casts, the tosses would be less generic. I told him that it's not the anchors job to watch the weather, and none of them are really reading what any of us send out including my blog. I also told him that you in particular have so much going on that he can't

iMessage



Terry (Weather) >

I talked to him, he's doing fine, and he does feel like things are getting better. He made a point that he sends out a Weather message every morning and he was hoping that from that or from you guys watching his weather casts, the tosses would be less generic. I told him that it's not the anchors job to watch the weather, and none of them are really reading what any of us send out including my blog. I also told him that you in particular have so much going on that he can't expect that to happen. That he needs to either write a toss in inews that he wants you to follow or tell you ahead in advance what he's going to start with.

Thank you.



Terry (Weather) >

I tried to talk to him several times in person and he won't speak to me. He's rude and mean and won't even look at me. I begged him to tell me what i did. And he won't.

I don't know. I didn't do anything and this is not ok with me at this point.

Wtf. Ok I will call him after work today

Fri, Apr 5 at 3:40 PM

Ok I talked him off his ledge. The three is us will meet next week. Let me know what works for you. Monday may be tough cause of eclipse.

Seriously what did I do? That is the rudest anyone has been to me at work ever

# Exhibit E



Jason >

Wed, Apr 3 at 5:36 AM

Hey Boo...

For both Concord MA and NH it's Conquered never Con-Chord 😘

That's what I said

No earlier you said Con-Chord. It was a while ago. Sorry earlier. 😂

Doubtful

but ok

Wow. Cool. Ok. Sorry

# Exhibit F





7:46      .ıl 5G 🔋

J

Jordyn j

Like bro you don't pronounce anything right

Yeah he just sat there

Literally I had no idea these texts were going on Jason just gets upset and like flips out, like so unprofessional

Wed, Apr 3 at 2:07 PM

So Jason literally unfollowed all of us? Lol

Kate just asked me if he unfollowed me and I checked and he did

WTF is going on with him

I didn't know he unfollowed all of us... that is so fucking bananas!! I told Kate today I thought I did something to him too because I saw he unfollowed me when he weirdly tagged me in a post as a collaborator and when I went to search him on my page he wasn't there and then I went to his and searched his following and I wasn't there and I was like wtf lmao

I can't believe he unfollowed all us...

He even unfollowed Liam?

Like wtf

Something deeper must be going on

iMessage



7:46

J
Jordyn j

He even unfollowed Liam?

Like wtf

Something deeper must be going on

Like someone told him we don't think he's good or something

So I just went to his following

And he's not even following like Penny anymore

I don't get it at all

I guess idk if he ever followed her tho

But says she follows him lmao

Is he unhinged

Based on what I saw today yeah....

I couldn't believe it...

I was like is he really starting an argument in front of everyone - mic'd up - to someone who like has been here forever

I was flabbergasted

And like dude don't take it personal we just need to get town names right bottom line

Edited

iMessage

# Exhibit G

