## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KATHERINE MERRILL DUNHAM,

               Plaintiff,

      v.

WBZ-TV, COLUMBIA BROADCASTING
SYSTEM, INC., PARAMOUNT GLOBAL, INC.,
JASON MIKELL, COURTNEY COLE, JUSTIN
DRAPER, and MICHAEL RODERICK,

               Defendants.

Civil Action No. 1:25-cv-12195-(JMJ)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS I, IV, V and VI

# TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Statement of Facts ............................................................................................................. 2

Legal Standard .................................................................................................................... 6

Argument ............................................................................................................................. 7

    I.    Count One Should Be Dismissed Because Plaintiff Fails to Plausibly Allege She Was Treated Differently Because of Her Gender or Sex. ................................................................... 7

    II.    Count Four Should Be Dismissed Because the Alleged Statements Were True and the Common Interest Privilege Applies. ............................................................................................. 9

    III.    Count Five Should Be Dismissed Because She Has Not Pled Actual Malice And Her Claims Are Barred By Privilege and Preemption. .................................................................... 12

        A.    The Complaint Does Not Set Forth a Plausible Claim Against Defendants Mikell, Draper, or Roderick for Tortious Interference with Advantageous Relations. ..................... 12

        B.    The Interference Claim Against Roderick and Draper Is Further Preempted Because It Requires Interpreting the Collective Bargaining Agreement. .............................................. 16

        C.    Merrill's Failure to Name Mikell As a Respondent to Her MCAD Charge Further Requires Dismissal of Her Tortious Interference Claim Against Him. ................................. 18

Conclusion ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acciavatti v. Pro. Servs. Grp., Inc.*,
  982 F. Supp. 69 (D. Mass. 1997) ...........................................................................................18

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  267 F.3d 30 (1st Cir. 2001) .......................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................6, 7

*Aulson v. Blanchard*,
  83 F.3d 1 (1st Cir. 1996) ...........................................................................................................6

*Ballinger v. Town of Kingston*,
  No. 18-cv-11187-FDS, 2019 WL 6726689 (D. Mass. Dec. 10, 2019) ....................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................................6

*Blackstone v. Cashman*,
  448 Mass. 255 (2007) .........................................................................................................15, 16

*Bottomley v. Bos. Pub. Sch.*,
  No. 17-cv-12107-LTS, 2018 WL 6682764 (D. Mass. Dec. 19, 2018) ......................................8

*Bounphasaysonh v. Town of Webster*,
  2021 U.S. Dist. LEXIS 75123 (D. Mass. Mar. 1, 2021) .........................................................19

*Bratt v. IBM Corp.*,
  392 Mass. 508 (1984) ..............................................................................................................10

*Brodbeck v. Mass. Dep't of Corr.*,
  No. 18-cv-10855-DJC, 2021 WL 3131601 (D. Mass. July 23, 2021) ......................................8

*Bros. v. Town of Millbury*,
  No. 14-cv-10122-TSH, 2014 WL 4102436 (D. Mass. Aug. 14, 2014) ...................................15

*Charland v. Muzi Motors, Inc.*,
  417 Mass. 580 (1994) ..............................................................................................................19

*Dick v. Woods Hole Oceanographic Institution*,
  No. 21-cv-10007-DJC, 2021 WL 3146049 (D. Mass. July 26, 2021) ...............................13, 16

*Freadman v. Massachusetts Port Auth.*,
No. 2084CV02211, 2022 WL 2180237 (Mass. Super. Jan. 6, 2022) ....................................10

*Goldhor v. Hampshire Coll.*,
25 Mass. App. Ct. 716 (1988) ...........................................................................................9, 10

*Green v. Wyman-Gordon Co.*,
422 Mass. 551 (1996) ...............................................................................................................19

*Impact Tech. Licensing, LLC v. Barry-Wehmiller Co., Inc.*,
2025 Mass. Super. LEXIS 39 (Superior Ct. Suffolk Cnty. March 7, 2025) ...........................13

*Kersey v. Dennison Mfg. Co.*,
No. 89-cv-2650-MA, 1992 WL 71390 (D. Mass. Feb. 21, 1992) ...........................................9

*King v. Driscoll*,
418 Mass. 576 (1994) ...............................................................................................12, 13, 16

*Landry v. Mier*,
921 F. Supp. 880 (D. Mass. 1996) ..........................................................................................11

*Lawless v. Estrella*,
99 Mass. App. Ct. 16 (2020) ....................................................................................................11

*Lawrence Gen. Hosp. v. Cont'l Cas. Co.*,
90 F.4th 593 (1st Cir. 2024) ......................................................................................................6

*Lin v. CGIT Sys., Inc.*,
No. 20-cv-11051-MBB, 2021 WL 4295863 (D. Mass. Sept. 21, 2021)...................................8

*Luciano v. Coca-Cola Enters., Inc.*,
307 F. Supp. 2d 308 (D. Mass. 2004) ...............................................................................15, 16

*Magerer v. John Sexton & Co.*,
912 F.2d 525 (1st Cir. 1990)..............................................................................................17, 18

*McKee v. Cosby*,
236 F. Supp. 3d 427 (D. Mass. 2017), *aff'd*, 874 F.3d 54 (1st Cir. 2017), *cert.
denied*, 586 U.S. 1172 (2019) ................................................................................................10

*Mekonnen v. ABM Parking Servs., Inc.*,
No. 14-12389-IT, 2014 WL 5112110 (D. Mass. Oct. 10, 2014) ..............................................8

*O'Donnell v. Boggs*,
611 F.3d 50 (1st Cir. 2010)................................................................................................16, 17

*Richie v. Dep't of State Police*,
60 Mass. App. Ct. 655 (2004) (Kafker, J.) ............................................................................14

*Sabatini v. Knouse*,
  105 Mass. App. Ct. 174 (Jan. 14, 2025), *review granted*, 496 Mass. 1103
  (2025) ................................................................................................................10, 11

*Santay v. Ice House LLC*,
  No. 24-cv-11583-ADB, 2024 WL 4804967 (D. Mass. Nov. 15, 2024) ...................................7

*Sherman v. Clear Channel Outdoor, Inc.*,
  889 F. Supp. 2d 168 (D. Mass. 2012) ...................................................................................12

*Sullivan v. Superintendent, Mass. Corr. Inst.-Shirley*,
  101 Mass. App. Ct. 766 (2022) ............................................................................................11

*Taylor v. Swartwout*,
  445 F. Supp. 2d 98 (D. Mass. 2006) .......................................................................................9

*Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
  474 Mass. 382 (2016) ......................................................................................................19, 20

*Zimmerman v. Direct Fed. Credit Union*,
  262 F.3d 70 (1st Cir. 2001) ............................................................................................12, 15

**STATUTES**

42 U.S.C. § 2000(e)-3(a) ...................................................................................................12, 14

G.L. c. 151B, § 4 .........................................................................................................12, 14, 19

G.L. c. 151B, § 5 .................................................................................................................19

G.L. c. 151B, § 9 .................................................................................................................19

# INTRODUCTION

Plaintiff Katherine Merrill Dunham ("Merrill') brings claims against both corporate and individual defendants, claiming that they discriminated against her on account of her race (White) and gender (female). The predicate of Merrill's "reverse discrimination" case is her allegation that the corporate defendants Paramount Global Inc. ("Paramount"), Columbia Broadcasting System, Inc. ("CBS"), and WBZ-TV ("WBZ") (together, the "Corporate Defendants")[1] demoted her and effectively forced her to resign because, in WBZ's efforts to diversify its on-air staff, it discriminated against White people, including her. (Compl. p. 2 and ¶¶20-31). While the Complaint repeatedly characterizes Merrill as someone who is "anti-racist" – pointing to what she describes as warm personal and professional relationships with some Black people, (*see id*. at ¶¶17-19) – her allegations rest on the demeaning and unfounded stereotype that the Corporate Defendants decided to hire and advance people of color only in furtherance of a "DEI agenda" – in other words, only because of these new hires' race, not because they were actually qualified to be hired or to advance in their careers. (*Id*. at ¶¶ 29-31).

In addition to her claims against the Corporate Defendants, Merrill additionally brings claims against three individual defendants: Michael Roderick ("Roderick"), Paramount's Employee Relations investigator who investigated complaints that Merrill engaged in disparate treatment of colleagues of color; Justin Draper ("Draper"), then-President and General Manager of WBZ who reassigned Merrill to a weekend anchor position and required her to take unconscious bias training based on the results of the investigation; and a single claim of tortious interference against Jason Mikell ("Mikell"), a Black meteorologist who joined WBZ in 2023,

---

[1] Paramount Global Inc. and Columbia Broadcasting System, Inc. are non-existent entities. Defendants believe Merrill intended to name the corporate entities Paramount Global and CBS Broadcasting Inc; the correction of these names in this motion is not to suggest they are proper defendants in this matter.

the sole basis of which are allegations that Mikell reported to Paramount that Merrill had treated him, a Black man, differently than others on account of his race. (*Id.* at ¶¶6, 8-9, 72, 75, 85, 111.)

Merrill's Complaint alleges that Defendants' conduct violated the anti-discrimination provisions of Title VII of the 1964 Civil Rights Act, G.L. c. 151B, the Massachusetts Wage Act, and common law. For the reasons set forth below, the majority of Merrill's claims – Counts I, IV, V, and VI – should be dismissed as she has not pled sufficient facts to support them.[2]

### STATEMENT OF FACTS[3]

Merrill joined WBZ as a reporter in Boston, Massachusetts in 2004. (Compl. ¶15.) She held various reporter and anchor roles throughout her tenure there and ultimately served as co-anchor for WBZ This Morning and WBZ News at Noon starting in 2017. (*Id.* at ¶16.) Merrill alleges that following complaints of racism and sexism at CBS in 2019, multiple changes were implemented to "hire[] and promote[] women and/or people of color to serve in key roles" – actions Merrill disparages as "reverse discrimination." (*Id.* at ¶¶20-23.) The Complaint goes on to detail the Corporate Defendants' hiring and promoting of allegedly less-experienced women and individuals of color to replace their allegedly better- and more-qualified White colleagues. (*Id.* ¶¶24-25, 28-31, 35-38.) She specifically describes defendant Mikell as a "less experienced television meteorologist" than the White meteorologist he replaced in 2023. (*Id.* ¶¶36-38.) Despite Merrill's apparent belief that Mikell was only hired because of his race and not because he was the most qualified candidate for the role, she alleges she interacted "warmly" with him,

---

[2] Merrill's sole claim under the Massachusetts Wage Act, Count VI of the Complaint, is that the Corporate Defendants failed to timely pay her 20 days of accrued, unused vacation following her separation date. The full treble amount plus interest was paid to Merrill, via her counsel, on Friday, November 21, 2025. Consequently, she can no longer claim any damages as to Count VI and it should be dismissed.

[3] As required on a motion pursuant to Rule 12(b)(6), we recite the facts as alleged in the Complaint, assuming their truth solely for purposes of this motion.

offering to introduce him to friends and acquaintances in Boston, helping with his pronunciation of local town names allegedly at his request, and complimenting his work. (*Id*. at ¶¶39-40, 42.)

According to the Complaint, Merrill learned in April 2024 that Roderick, a Vice President in Paramount's Employee Relations group, was conducting an investigation into allegations that Merrill treated coworkers differently because of their race. (*Id*. at ¶49.) The Complaint alleges that the allegations arose from complaints by Mikell and former defendant Courtney Cole. (*Id*. at ¶49.) Merrill alleges, based solely on her inferences from questions that Roderick asked her during his investigation, that Mikell "complained" to Roderick that (1) "upon welcoming [him] to Boston, [Merrill said] that he would 'find his people;'" (2) that Merrill was "always critical of him," (3) that Merrill "did not ask him about his weekends;" and (4) that Merrill said, "in connection with banter about Mikell's "Do Your Job" segment, that he could work as a garbage collector…" (*Id*. at ¶51.) Without asserting any facts, she speculates that Mikell interpreted each of these as racist and reported them as so to Roderick. (*Id*.) Merrill does not deny the alleged statements, actions, or inactions, but instead takes great pains to explain and justify why each was not motivated by overt racism or unconscious bias – or in one case, why another colleague was also racially insensitive. (*Id*. at ¶¶51-52.) Merrill alleges that, "[b]ased on the falsity and/or . . . misleading nature" of the statements she speculates Mikell made to Roderick, Mikell acted "with malice and/or improper motive in lodging a complaint against her." (*Id*. at ¶53.) Merrill makes the same assertions as to Cole, alleging – based solely upon questions that Roderick asked her in his investigation – that Cole reported that "on one occasion, Merrill stated to her that she used to work in Nashville and Defendant Cole should go there because she could become the main anchor there. . . ." (*Id*. at ¶54.) Failing to appreciate the undermining nature of this comment – made to a young colleague who was in the process of establishing her

career *in Boston* – Merrill then engages in fact-free speculation that Cole must have "interpreted" her remark as a suggestion that Nashville would be a "better racial fit" for Cole rather than as a comment about "career opportunities." (*Id*. at ¶54.) Again, while Merrill denied that "…any of her actions, inactions, or comments were as described or motivated by overt racism or unconscious bias," Merrill does not actually dispute that she made the comment to Cole, (*id*. at ¶¶54-55), objecting instead to the way the comment was allegedly interpreted.

The Complaint goes on to allege that, in light of the information that Roderick gathered during his investigation (including the above-described information he obtained from Mikell and Cole), he "concluded that Merrill's behavior was grounded in microaggressions or unconscious bias and created a very unwelcoming work environment." (*Id*. at ¶66.) Merrill alleges Roderick's investigation was "not adequate, thorough, or impartial," due to his failure to interview certain witnesses, because he allegedly premised an opinion on an inaccurate timeline, and by basing his conclusions on statements Merrill allegedly did not say or that he "misrepresented, mischaracterized and/or twisted." (*Id*. at ¶¶60-70.) Merrill further alleges that Roderick and the Corporate Defendants did not investigate her own complaint that Mikell allegedly yelled at Merrill on the studio floor during the same time period. (*Id.* at ¶45-48.) She then contradicts herself, asserting that Roderick – Paramount's Employee Relations *investigator* – informed her that he "was not able to corroborate the complaint she lodged against Mikell." (*Id*. at ¶65.)

The Complaint goes on to allege that as a result of Roderick's conclusions that her behavior "was grounded in microaggressions or unconscious bias and created a very unwelcoming work environment," defendant Draper issued a written warning to Merrill that, among other things, required her to complete unconscious bias training. (*Id*. at ¶66.) Draper then "demoted" Merrill by reassigning her from co-anchoring the weekday morning show to working

weekend nights. (*Id*. at ¶72.) Merrill asserts that this "demotion" was harsher than how WBZ treated male employees who have been found to have engaged in wrongdoing, identifying two Black men and an Asian man as having received no discipline for other infractions. (*Id*. at ¶79.)

Merrill claims Draper "unnecessarily" announced her demotion to all WBZ personnel in two separate staff meetings on May 20, 2024. (*Id*. at ¶75.) Without asserting any facts, Merrill alleges that "many" WBZ personnel were aware of the investigations because of rumors and that "demoting [her] in the context of the investigation sent the false message to her professional colleagues that she had engaged in serious wrongdoing." (*Id*. at ¶76.) Alleging the schedule change unacceptably damaging, Merrill "gave notice of constructive discharge resignation" on May 24, 2024. (*Id*. at ¶82.) She then alleges – apparently assuming that Cole could not possibly have progressed in her career at WBZ otherwise – that, "as a result of Merrill's demotion (and subsequent separation from WBZ), Defendant Cole's role on WBZ expanded." (*Id*. at ¶83.)

On September 16, 2024, Merrill, filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"), a copy of which is attached hereto as **Exhibit 3**.[4] (*Id.* at ¶10.) While her Charge and Rebuttal included the same allegations about Mikell that form the basis of Merrill's claim against him here, she did not name him as a Respondent in the Charge. (*See* Ex. 3.)

On August 5, 2025, Merrill filed her Complaint, alleging race and sex discrimination, failure adequately to investigate, defamation, untimely payment of wages, and tortious interference with advantageous relations.[5] (Compl. at ¶¶87-122.) As to her tortious interference

---

[4] Exhibits referenced herein are attached to the Declaration of Mark W. Batten, filed concurrently with this motion.

[5] Merrill initially brought a claim of tortious interference against Cole as well on the same singular basis as her claim against Mikell – that Cole reported to Paramount that Merrill had treated her, a Black woman, differently than others on account of her race. (*Id*. at ¶¶7, 54-56, 111.) Perhaps recognizing the dearth of evidence against Cole to support such a claim, Merrill dismissed the claim against Cole with prejudice on October 16, 2025. (*See* Doc No. 6.)

claim, Merrill alleges Mikell, Roderick, and Draper interfered with her business relationships

with defendants WBZ, CBS, and Paramount. Therefore, even though Merrill did not attach her

WBZ employment agreement to her Complaint, her pleadings necessarily incorporate it by

reference. A copy of the employment agreement effective during the relevant time period is

attached hereto as **Exhibit 1**.[6] In multiple provisions, including as to vacation pay and

termination of employment, the agreement further specifically references the "then-current SAG-

AFTRA collective bargaining agreement applicable to [Merrill]" when defining terms and

conditions. (Ex. 1 at ¶¶2(d), 3(e).) A copy of the CBA is attached hereto as **Exhibit 2**.

## LEGAL STANDARD

On a motion to dismiss claim under Rule 12(b)(6), the court accepts "as true all well-

pleaded facts alleged in the complaint and draw[s] all reasonable inferences … in the [plaintiff's]

favor." *Lawrence Gen. Hosp. v. Cont'l Cas. Co*., 90 F.4th 593, 598 (1st Cir. 2024). The Court is

not required to "swallow the plaintiff's invective hook, line, and sinker; bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *See*

*e.g., Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Rather, what is required at the pleading

stage are factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to

relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Factual allegations must be

enough to raise a right to relief above the speculative level." *Id*. at 555. "[L]abels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  A

complaint must contain "sufficient *factual* matter, accepted as true, to state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (emphasis added). A claim

---

[6] *See, e.g.*, *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co*., 267 F.3d 30, 33 (1st Cir. 2001) (on a Rule 12(b)(6) motion a court may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint") (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

I.    **Count One Should Be Dismissed Because Plaintiff Fails to Plausibly Allege She Was Treated Differently Because of Her Gender or Sex.**

The Complaint does not plausibly allege that Plaintiff was treated differently because of her gender or sex. Of over 70 paragraphs of alleged facts in her Complaint, only a *single* paragraph alleges any facts related to gender or sex discrimination. (Compl. at ¶79.) It instead focuses entirely on race, alleging the Corporate Defendants made employment decisions based on unlawful racial preferences that pervaded the company, at WBZ and elsewhere within Paramount. Indeed, several allegations even describe the Corporate Defendants as advancing women over men, highlighting the alleged replacement of White male anchors with a Black *female* anchor and reporter or the lack of discipline given to a Black *female* executive for improper racial preferences. (*Id.* at ¶¶23, 25-26, 29, 31); (*see also id.* at ¶23) ("CBS News and Stations 'prioritized diversity, equity, and inclusion initiatives, hired and promoted several *women* and/or people of color to serve in key roles...") (emphasis added). This is far from plausibly alleging any connection to sex or gender. *See Santay v. Ice House LLC*, No. 24-cv-11583-ADB, 2024 WL 4804967, at *4 (D. Mass. Nov. 15, 2024) (dismissing sex-, race-, and national origin-based discrimination claims where Plaintiff attributed adverse action to plaintiff's complaints about overtime).

Even in the single paragraph aimed at gender, alleging a disparity between her purported demotion and a lack of discipline given to men accused of wrongdoing, the male comparators she identifies are all also either Black or Asian. (*Id.* at ¶79.) When read alongside the Complaint in its entirety – which in all other instances focuses on race and not gender or sex – there is no

basis to conclude that any different treatment among Merrill and those comparators was gender- or sex-based rather than race-based. Further, in the very next paragraph, Merrill immediately undermines any tie to a gender-based motive for her purported demotion by again tying the action solely to her race. (*Id*. at ¶80.) Further, Merrill has not presented any evidence that any differing treatment "was due to her gender rather than her and [her comparators] having committed different [] violations." *Brodbeck v. Mass. Dep't of Corr.*, No. 18-cv-10855-DJC, 2021 WL 3131601, at *7 (D. Mass. July 23, 2021). The closest is her co-anchor's "Dirty Jobs" comment, Compl. ¶ 79(b), but even that allegation is a single comment compared to the multiple comments and actions allegedly raised regarding Merrill's conduct.

This is far from enough to plausibly allege she was treated differently because of her gender. *See Lin v. CGIT Sys., Inc.*, No. 20-cv-11051-MBB, 2021 WL 4295863, at *8 (D. Mass. Sept. 21, 2021) (dismissing race discrimination claims where vast majority of complaint focused on age discrimination and contained "just two references to plaintiff's race"). "[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Bottomley v. Bos. Pub. Sch.*, No. 17-cv-12107-LTS, 2018 WL 6682764, at *3 (D. Mass. Dec. 19, 2018) (dismissing gender discrimination claims) (internal citation omitted); *Mekonnen v. ABM Parking Servs., Inc.*, No. 14-12389-IT, 2014 WL 5112110, at *4 (D. Mass. Oct. 10, 2014) (dismissing sex discrimination claim where "Plaintiff only alleges that her employer treated male employees more favorably by not taking action against them when they violated the company's rules and that her replacement was male" because complaint did "not allege facts suggesting that her alleged disparate treatment was based on her sex.").

II.    **Count Four Should Be Dismissed Because the Alleged Statements Were True and the Common Interest Privilege Applies.**

To support her defamation claim, Merrill alleges that Draper "unnecessarily broadly" publicly announced her schedule change in two separate staff meetings to all WBZ personnel. (Compl. ¶¶75, 77.) She alleges that by making this announcement at the conclusion of the investigation, he sent the false message to her colleagues – many of whom allegedly had heard rumors of the investigation – that she had engaged in serious wrongdoing. (*Id*. at ¶¶75-76.) This is far from sufficient to support a defamation claim.

To establish a defamation claim under Massachusetts law, Merrill must prove, among other things, a false and defamatory communication. *See, e.g.*, *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102 (D. Mass. 2006). Merrill cites only Draper's alleged communications to WBZ personnel that she was being reassigned from mornings to weekends. Even accepting for these purposes that a reassignment to weekend anchor constituted a "demotion," Draper's statement that Merrill had been demoted was a true statement, as the Complaint itself affirms. (Compl. ¶72) ("Defendant Draper then immediately informed Merrill that he would be demoting her from her role as co-anchor of the Weekday Morning Show to working weekend nights"). A true statement cannot support a defamation claim. *See Taylor*, 445 F. Supp. 2d at 102 ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation.").

Merrill attempts to avoid that obvious deficiency by transforming Draper's statement about her schedule change into an implication "that she had engaged in serious wrongdoing." (Compl. ¶75-76.) In the first instance, even assuming that the schedule change would be viewed as a demotion, "[a]n announcement of suspension or demotion is not defamatory, regardless of any inferences that may be drawn from the announcement." *Kersey v. Dennison Mfg. Co*., No. 89-cv-2650-MA, 1992 WL 71390, at *4 (D. Mass. Feb. 21, 1992) (citing *Goldhor v. Hampshire*

- 9 -

*Coll.*, 25 Mass. App. Ct. 716, 724 (1988)). The Complaint does not allege that Draper did anything more than communicate the bare fact that Merrill was moving to the weekend position; it does not allege that Draper made any statements that she had engaged in wrongdoing, nor that he tied the schedule change to any investigation – or even that he tied the purported demotion to anything at all. All she pleads is that Draper announced she had been demoted.[7]  This is not enough. *See McKee v. Cosby*, 236 F. Supp. 3d 427, 443 (D. Mass. 2017), *aff'd*, 874 F.3d 54 (1st Cir. 2017), *cert. denied*, 586 U.S. 1172 (2019) (dismissing defamation claim and holding that "any implication supporting a defamation claim must derive primarily from the specific language used (or the 'gist' derived from that language), not merely the known or speculative circumstances surrounding a given statement.") (emphasis omitted). [8]

Further, even if truth was not an absolute defense, which it is, Draper's statements to WBZ staff that Merrill had been reassigned cannot support a defamation claim because the communication was conditionally privileged. A communication is "conditionally privileged if the publisher of the statement and the recipient have a common interest in the subject and the statement is reasonably calculated to further or protect that interest." *Sabatini v. Knouse*, 105 Mass. App. Ct. 174, 183, (Jan. 14, 2025), *review granted*, 496 Mass. 1103 (2025).  This privilege applies even to false and defamatory statements.  *Bratt v. IBM Corp.*, 392 Mass. 508, 509 (1984).

Informing WBZ personnel that a morning anchor would be moving to a different news program is clearly within the common interest of Draper, the then-President and General

---

[7] The exhibit she attaches as evidence further demonstrates that nothing in Draper's statement tied the schedule change to Merrill's wrongdoing; the unidentified individuals in that exchange were disagreeing and debating the reasons why she left the Morning Show.  (*See* Compl. at Ex. G.)

[8] While *Freadman v. Massachusetts Port Auth.*, No. 2084CV02211, 2022 WL 2180237, at *14–15 (Mass. Super. Jan. 6, 2022) found defamation allegations sufficient relating to a demotion after an investigation, the facts there are distinguishable because the plaintiff alleged defendants engaged in "other statements…to external stakeholders" apart from the simple statement that the plaintiff had been put on leave or demoted.  That is not the case here.

Manager of WBZ, and the WBZ staff. While the privilege can be lost by excessive publication, reckless disregard of the truth, or acting with actual malice, *see Sabitni*, 105 Mass. App. Ct. at 174, Merrill has pled no such facts. Making a staffing announcement to WBZ staff is not unnecessary, unreasonable, or excessive. *See id*. at 178 (dismissing defamation claims based on conditional privilege where employer informed staff that plaintiff was no longer employed and had violated the organization's sexual harassment policies). The *Sabatini* court held that the individuals "shared … a 'common interest' in [Plaintiff employee's] fitness to run a laboratory free from sexual harassment, and [defendants'] statements were 'reasonably calculated to further or protect that interest.'" *See id*. at 183-184. The court further held that – similar to the allegations here – the complaint acknowledged facts that showed defendants "had a reason to believe the statements and did not act out of malice" in sharing them. *See id*.; *see also Sullivan v. Superintendent, Mass. Corr. Inst.-Shirley,* 101 Mass. App. Ct. 766, 777 (2022) (dismissing defamation claim where plaintiff pled no facts that publisher had any reason to believe the statements to be false); *Lawless v. Estrella*, 99 Mass. App. Ct. 16, 25 (2020) ("Malice, in this sense, occurs when defamatory statements are not published 'pursuant to the right and duty which created the privilege,' but rather 'out of some base ulterior motive,' which may include the intent to injure another, intent to use the privilege as a pretense, or reckless disregard of the rights of another"). "[M]ere incidental evidence of ill will…is insufficient to establish actual malice." *Landry v. Mier,* 921 F. Supp. 880, 888 (D. Mass. 1996) (internal citations omitted). Similar to *Sabatini*, Merrill has not pled any facts suggesting Draper acted with malice or reckless disregard for his statements' truth or falsity. To the contrary, she pleads that an investigation occurred, it found she had engaged in wrongdoing, and that Defendants demoted her based on those findings. She has pled no facts suggesting Draper did not have reason to

believe the statements he made or that he acted out of malice in informing personnel about a staffing change on the Morning Show.

**III.    Count Five Should Be Dismissed Because She Has Not Pled Actual Malice And Her Claims Are Barred By Privilege and Preemption.**

Merrill has not sufficiently pled tortious interference against any of the three defendants she identifies. Her sole claim against Mikell rests on his complaint to management of differential treatment based on race – conduct that is not tortious but, to the contrary, is legally protected. 42 U.S.C. § 2000(e)-3(a); G.L. c. 151B, § 4(4). And the conduct attributed to Roderick and Draper – Roderick's investigating complaints of racial disparate treatment against Merrill and Draper's announcing her reassignment to weekends – also falls far short of pleading the required malice. Merrill's claims fail in any event because she failed to name Mikell as a respondent in her MCAD Charge and any common law "interference" claim she would have against Draper and Roderick is preempted by the Labor Management Relations Act ("LMRA").

A.    The Complaint Does Not Set Forth a Plausible Claim Against Defendants Mikell, Draper, or Roderick for Tortious Interference with Advantageous Relations.

A claim of tortious interference with advantageous relations requires a plaintiff to allege facts demonstrating: "(1) that she had a business relationship, (2) that the defendant knew of this relationship, (3) that the defendant intentionally and maliciously interfered with the relationship, and (4) that the defendant's actions harmed her." *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76 (1st Cir. 2001). "It is well established that 'the improper motive or malevolence required is actual malice, a spiteful, malignant purpose, *unrelated to the legitimate corporate interest*.'" *Sherman v. Clear Channel Outdoor, Inc*., 889 F. Supp. 2d 168, 176 (D. Mass. 2012) *quoting King v. Driscoll*, 418 Mass. 576, 587 (1994). "[P]ersonal dislike will not warrant an inference of the requisite ill will." *Id*. Nor will such an inference be warranted where it rests solely on allegations that the challenged conduct advanced the defendant's own economic

interest or was motivated by personal gain. *See King*, 418 Mass. at 587; *Impact Tech. Licensing, LLC v. Barry-Wehmiller Co., Inc.*, 2025 Mass. Super. LEXIS 39, *32 (Superior Ct. Suffolk Cnty. March 7, 2025) (dismissing tortious interference claim even where alleged desire to advance defendant's economic interest included desire to "punish and harm" plaintiffs).

    *Dick v. Woods Hole Oceanographic Institution*, No. 21-cv-10007-DJC, 2021 WL 3146049 (D. Mass. July 26, 2021) is particularly instructive. Following complaints about the plaintiff's treatment of colleagues, an investigator concluded the plaintiff should be disciplined. *See id.* at *2-3. The plaintiff claimed discrimination based on his age and gender, and included a tortious interference claim against the investigator, alleging not only that the investigation was deficient, but also that the investigator falsely accused him of creating a hostile work environment to bring about his termination. *Id*. at *8. The Court found these allegations insufficient for a plausible tortious interference claim because plaintiff failed to allege the defendant acted with the requisite "spiteful, malignant purpose, unrelated to the legitimate corporate interest," holding:

> [Plaintiff] fails, however, to allege plausibly that there was an "actionable improper motive" behind [the investigator's] actions, and more specifically, that said motive was "unrelated to [a] legitimate corporate interest.". . . Even accepting the non-conclusory allegations of the complaint as true, [plaintiff] has failed to establish that [the investigator] acted with improper means or motive and, therefore, [plaintiff]'s tortious interference claim against [the investigator] fails.

*Id*. at *8-9. The same reasoning applies here.  Stripped of self-serving characterizations, pure speculation, legal conclusions, and rote recitation of the elements of the tortious interference claim, Merrill's factual allegations are, at best, that:

- Mikell and Cole – both recently-hired Black employees – complained to Paramount's legal department that Merrill treated colleagues of color differently than she treated those who were White (Compl. ¶49);

- When Paramount investigated these allegations – according to what Merrill could infer – Mikell and Cole (and others) reported Merrill's interactions with them – interactions that Merrill disputes were related to their race (*Id*. at ¶¶51-57);

- Roderick did not interview particular witnesses Merrill thought he should and ultimately substantiated complaints of microaggressions and unconscious bias against her based on his determination that statements she made were racially motivated when she did not mean them that way (*Id*. at ¶¶60-70);

- Roderick cited statements Merrill made to him and his opinion of Merrill's motive in complaining about Mikell's behavior, as examples supporting the conclusion that Merrill had engaged in "microaggressions or unconscious bias" that created "a very unwelcoming work environment" (*Id*. at ¶¶66-67, 69); and

- Draper "unnecessarily broadly announced [her] demotion, humiliating her." (*Id*. at ¶77.)

Merrill presents no facts to show that Mikell, Roderick, or Draper's conduct was driven by actual malice – namely, a spiteful, malignant purpose, unrelated to a legitimate corporate interest.

On the contrary, Merrill's factual allegations demonstrate just the opposite. Mikell reported differential treatment on the basis of race and participated in the resulting investigation – legally protected activities that further both the employer's interest and the public interest in maintaining workplaces that are free from unlawful discrimination. *See, e.g.*, 42 U.S.C. § 2000(e)-3(a) (making it an unlawful practice for an employer to "discriminate" against an employee who has opposed any practice made unlawful by the statute or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."); G.L. c. 151B, § 4(4) (making it an unlawful practice for any person to "discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified, or assisted in any proceeding under section five"); *Richie v. Dep't of State Police*, 60 Mass. App. Ct. 655, 664-65 (2004) (recognizing that "protected activity" includes "complaining to management" or "filing an internal complaint"); *see also* MCAD Guidelines on Harassment in the Workplace, VIII, pages

34-35 and n.83 (July 2, 2024) (specifying that "protected activity" under G.L. c. 151B may include without limitation "[c]omplaining to management . . . or filing an internal complaint," and "[c]ooperating with an internal investigation . . . .") At most, Merrill alleges – based upon what she deduced from Roderick's investigative interview – that Mikell believed that Merrill's statements to and regarding him were based on Mikell's race. Even if Mikell had made such a statement and the statement was false, this is precisely what *Woods Hole* said would not suffice to show "malice" for purposes of stating a plausible tortious interference claim.

Merrill similarly fails adequately to allege that Roderick or Draper acted out of a "spiteful, malignant purpose, unrelated to the legitimate corporate interest" sufficient to overcome the qualified privileged that covers "corporate officials" when they act "within the scope of their employment responsibilities." *Blackstone v. Cashman*, 448 Mass. 255, 260-261 (2007); *see also Zimmerman,* 262 F.3d at 76 (plaintiff has burden of proving supervisor acted with "actual malice" which was the "controlling factor in the supervisor's interference").

The Complaint itself acknowledges that Roderick was conducting an investigation into complaints raised against Merrill as part of his role in Employee Relations. (Compl. ¶¶9, 49.) Merrill has not pled that Roderick either intentionally created false allegations against her or destroyed evidence – conduct found sufficient to plead actual malice. *See Bros. v. Town of Millbury*, No. 14-cv-10122-TSH, 2014 WL 4102436, at *9 (D. Mass. Aug. 14, 2014) (dismissing tortious interference claim for defendant merely voting for discipline based on investigation findings and differentiating sufficiently pled tortious interference claim against defendants alleged to have made false charges against Plaintiff and destroyed evidence); *see also Luciano v. Coca-Cola Enters., Inc.,* 307 F. Supp. 2d 308, 324 (D. Mass. 2004) (granting summary judgment where alleged tortious interference was "manager's disagreement with an employee's complaints

about her supervisor after he has investigated the facts," and "failure. . . . to respond to a complaint with the absolute sense of urgency that an employee feels the situation requires"); *see also Woods Hole,* 2021 WL 3146049, at *8 (dismissing tortious interference claim against investigator where allegations were conducting an inadequate investigation). Indeed, Merrill has not even denied making the statements or engaging in the conduct on which Roderick based his conclusions; she merely disagrees with how Roderick interpreted her statements and actions.

Draper's decision to reassign Merrill based on the investigation findings cannot suffice to plead actual malice; Merrill has alleged no more than that Draper disagreed with her assessment of the investigation's caliber and findings. *See Luciano,* 307 F. Supp. 2d at 324 ("[a] manager's disagreement with an employee's complaints about her supervisor after he has investigated the facts . . . cannot possibly amount to malice."). And her contention that Draper could have announced her reassignment to fewer people fails to plead any facts that would demonstrate actual malice. *See King*, 418 Mass. at 495 (malice is a "spiteful, malignant purpose, unrelated to the legitimate corporate interest" rather than mere hostility.). She does not allege that Draper included any alleged conduct by Merrill in his announcement, much less any "serious wrongdoing" as she alleges was implied. And by Merrill's own description, he only told WBZ staff, individuals directly employed by the station at which the staffing change occurred.

    B.  <u>The Interference Claim Against Roderick and Draper Is Further Preempted Because It Requires Interpreting the Collective Bargaining Agreement.</u>

Merrill's claims of tortious interference with contract necessarily refer to her employment contract with WBZ and/or SAG-AFTRA's CBA with WBZ. *See Blackstone,* 448 Mass. at 260 (tort, in the employment context, defined as interference with "a present or prospective contract or employment relationship"). State law claims such as tortious interference are preempted by Section 301 of the LMRA "where deciding [the tortious interference claim] would require the

- 16 -

court to interpret a CBA." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010). In *O'Donnell*,

the Court analyzed whether preemption was required where the plaintiff argued her supervisor

and Board members were so hostile and disruptive she could not perform her duties or return to

work. *See id.* at 55. In analyzing the preemption question, the Court recognized that the crux of

the dispute was whether defendants' actions were justified by their responsibilities authorized

under the contract and that the CBA in turn had a "standard, broad management rights clause"

that allowed management to take "action which the [company] deems desirable to the conduct of

its business." *See id*. at 56. The Court ultimately held that, even if the defendants had personal

motives for their actions, the plaintiff's claim could not be resolved without deciding, at a

minimum, whether the defendants' conduct was encompassed by the CBA clause. *See id*.

      Similarly to *O'Donnell*, the CBA in effect here has a broad management rights clause:

> …the Union recognizes that it is the responsibility and right of the Employer to maintain proper discipline and efficiency and agrees that the Employer shall have the freedom of action necessary to discharge its responsibility for the successful operation of its facilities….[including but not limited to]… the selection of those with whom it will do business; the determination of the programs to be broadcast; the types of work to be performed so long as the work is of the nature of work covered by this Agreement; the right to select, hire, promote, and assign said work to be performed by employees; and the right to make and apply reasonable rules and regulations for discipline and safety subject to the terms of this Agreement.

(*See* Ex. 2 at Sec. 4.) Merrill's allegations that Roderick acted improperly in his investigation,

and that Draper acted improperly in his "imposition of disparate discipline against Merrill"

squarely implicate this provision and require interpretation of whether it was violated. Her claim

is thus preempted. *See Ballinger v. Town of Kingston*, No. 18-cv-11187-FDS, 2019 WL

6726689, at *12 (D. Mass. Dec. 10, 2019) (tortious interference claim preempted where

interpretation of the applicable CBA was required); *Magerer v. John Sexton & Co.*, 912 F.2d

525, 530 (1st Cir. 1990) (finding preemption where CBA's "management rights" clause vests in

- 17 -

the employer, among other rights, the right to determine "the direction of the work forces, including the disciplining, suspension or *discharge of employees for proper cause*.") (emphasis in original); *Acciavatti v. Pro. Servs. Grp., Inc.*, 982 F. Supp. 69, 76 (D. Mass. 1997) (finding preemption where tortious interference claim required determining whether supervisor "acted within the scope of his employment requires reference to, and interpretation of, the CBA…").

Therefore, Merrill's tortious interference claims should be dismissed against Roderick and Draper both because she has failed to plead sufficient facts to show actual malice in their actions and because her claims are preempted.

C. <u>Merrill's Failure to Name Mikell As a Respondent to Her MCAD Charge Further Requires Dismissal of Her Tortious Interference Claim Against Him.</u>

In addition to prohibitions against employers, Mass. Gen. Laws c. 151B also prohibits individuals from engaging in conduct that interferes with another's right to be free from discrimination. *See* G.L. c. 151B, § 4(4A) (making it an unlawful practice "[f]or any person to . . . interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter."). In her MCAD Charge of Discrimination, Merrill named Draper and Roderick as individual respondents, invoking G.L. c. 151B, § 4(4A) as the source of her rights against them. (Exhibit 3 at ¶55(d).) Yet while Merrill included virtually the same allegations about Mikell that she includes here in her MCAD Charge, (*see* Ex. 3 at ¶¶23-24, 26-27, 30-36), she did not name Mikell as an individual respondent in her Charge.

Merrill's omission of Mikell from the Charge makes some sense because, as explained above, he is alleged to have done nothing more than make a report of disparate treatment to Merrill's employer – conduct affirmatively *protected* by G.L. c. 151B. To the extent the Court reads the Complaint alleging more – that is, that Mikell actively *participated* in the "reverse discrimination" about which Merrill claims – then she was required to follow the administrative

filing procedures of G.L. c. 151B, § 5 and name Mikell as a respondent in her Charge. Failure to do so precludes her from bringing her claim against Mikell in this Court. *See Green v. Wyman-Gordon Co.,* 422 Mass. 551, 562 (1996) (upholding dismissal on claims where G.L. c. 151B applied and plaintiff failed to file timely with the MCAD against the defendant); *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 582 (1994) (same when upholding dismissal of Massachusetts Equal Rights Act claim).

In *Wyman-Gordon*, the Supreme Judicial Court explained that the "exclusivity" language of G.L. c. 151B, § 9 embodies the legislative intent to "subject all discrimination claims to some administrative scrutiny." *Wyman-Gordon*, 422 Mass. at 555 (*quoting Charland*, 417 Mass. at 585). Thus, where G.L. c. 151B applies, a plaintiff may not evade its procedural requirements by recasting a discrimination claim as a violation of a related civil rights statute or as a violation of common law. *Id.* While *Charland* and *Wyman-Gordon* both make clear that G.L. c. 151B did not preclude plaintiffs from bringing claims against employers which are grounded in tort or contract principles established prior to the statute's enactment, *see Wyman-Gordon*, 422 Mass. at 555; *Charland*, 417 Mass. at 581, it regularly dismisses such common law claims where they do nothing more than recast claims cognizable under G.L. c. 151B, holding that these claims are barred by exclusivity provisions of G.L. c. 151B, § 9. *See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 415 (2016); *Bounphasaysonh v. Town of Webster*, 2021 U.S. Dist. LEXIS 75123, at *29 (D. Mass. Mar. 1, 2021), *report and recommendation adopted*, 2001 U.S. Dist. LEXIS 76374 (D. Mass. Mar. 18, 2021).

In *Verdrager*, for example, the plaintiff filed two charges at the MCAD which, taken together, alleged that her employer law firm and three of its partners had engaged in gender discrimination, pregnancy discrimination, and retaliation. *See Verdrager*, 474 Mass. at 393-94.

The plaintiff eventually removed her charges from the MCAD and filed her discrimination and retaliation claims in court but added a defendant to her complaint whom she had not named as a respondent before the MCAD. The Supreme Judicial Court upheld summary judgment on the tortious interference claim against that defendant (Cohen), explaining:

> The proper vehicle for [Ms. Verdrager's] claims against Cohen would have been "the administrative procedure provided in" G.L. c. 151B. See, G.L. c. 151B, § 9. The plaintiff failed to name Cohen in her MCAD complaints, and, according to her appellate brief, apparently did so for strategic reasons. "Insofar as the plaintiff's common law claim [] [is] merely [a] recast version[] of" a claim that could have been made "under [G.L.] c. 151B, [it is] barred by that statute's exclusivity provision.'

*Id*. at 415 (*quoting Wyman-Gordon*, 422 Mass. at 558).

*Verdrager* aligns directly with this case. While Merrill's allegations about Mikell were an integral part of her MCAD Charge, she made a decision not to name him as a respondent, even though G.L. c. 151B, § 4(4A) provides Merrill with a remedy against individuals whose conduct she believes interfered with her right to be free from race and gender discrimination. Her Charge and Complaint both allege that Mikell played a part in denying these rights by reporting that Merrill treated him differently than her White colleagues. Because Mikell was not named as a Respondent, however, he was not served with the Charge and thus had no opportunity to contest and/or conciliate in those proceedings. Where, as here, Merrill's "interference" claim against Mikell is cognizable under G.L c. 151B, she cannot sidestep the statute's administrative requirements. As in *Verdrager,* Merrill's failure to name Mikell as a respondent in her Charge precludes her from bringing her "interference" claim here.

## CONCLUSION

Defendants request that this Court dismiss: Count I, Count IV, Count V, and Count VI of Merrill's Complaint against Defendants and enter judgment for Defendants on each.

Dated: November 24, 2025

Respectfully submitted

DEFENDANTS PARAMOUNT GLOBAL AND
CBS BROADCASTING INC; WBZ-TV, JASON
MIKELL, JUSTIN DRAPER, AND MICHAEL
RODERICK

By their attorneys,
PROSKAUER ROSE, LLP

*/s/ Mark W. Batten*_____

Mark Batten (BBO# 566211)
One International Place, 22 Floor
Boston, MA 02110
(617) 526-9600
(617) 526-9899 (Fax)
mbatten@proskauer.com

Alexandra (Lexie) Reynolds (BBO# 690501)
PO Box 52
Vestal, NY 13851
(973) 681-6386
(617) 526-9899 (Fax)
areynolds@proskauer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by operation of the Court's ECF filing system, this 24th day of November, 2025.

_/s/ Mark W. Batten_____