# EXHIBIT 1

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

WBZ-TV/WSBK-TV

# EMPLOYMENT AGREEMENT

AGREEMENT made as of the 5th day of May, 2022, by and between **WBZ-TV**, 1170 Soldiers Field Road, Boston, Massachusetts 02134 (hereinafter the "Duopoly"), and **KATHERINE MERRILL DUNHAM, a/k/a KATE MERRILL**, c/o Napoli Management Group. Attention: Mendes Napoli, 8844 West Olympic Blvd., Suiter 100, Beverly Hills, California 90211 (hereinafter the "Artist").

In consideration of the mutual covenants herein contained, the parties hereto have agreed and do agree as follows:

**1. SERVICES.**

Duopoly hereby employs Artist and Artist hereby agrees to perform artistic and professional services as a Staff Newsperson, with duties which may include, without limitation, acting as an Anchor, Reporter, CBS News Boston streaming services Anchor/Reporter, News Editor, Program Announcer, Program Producer and Program Host, and any related duties in broadcasting and other media, including, without limitation, customizing existing material and/or producing original material for use in all media, and technical functions, that Duopoly may determine. Artist will register a Twitter account to a CBS email address using WBZ in the handle for any news related posts. Artist retains ownership of personal social media accounts created before employment with CBS.

**2. COMMENCEMENT AND TERMINATION.**

(a) TERM: The term of this Agreement shall commence on June 1, 2022 and shall continue, unless sooner terminated, for a period of Three (3) Contract Years, as defined in Paragraph 3(a) hereof.

(b) FIRST NEGOTIATION: If Duopoly desires to continue to utilize Artist's services after the expiration of this Agreement, Duopoly shall so notify Artist, in writing, at least ninety (90) days prior to the expiration of the term of this Agreement. Upon such written

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

notification, for at least the following sixty (60) days, Artist shall negotiate in good faith exclusively with Duopoly concerning continuation of Artist's services to Duopoly in the period following expiration of this Agreement. Nothing contained herein shall relieve Artist of Artist's right-of-first-refusal obligations under this Paragraph 2.

(c)  FIRST REFUSAL: During the term hereof, Artist shall not enter into the employment of or perform services for, or agree to enter into the employment of or perform services for, any other radio or television station engaged in broadcasting (as defined in Paragraph 12) within Duopoly's DMA unless Artist has first offered to enter into an agreement for Artist's services with Duopoly on terms and conditions at least as favorable to Duopoly as those offered to Artist by such other station or offered to such other station by Artist. Duopoly shall have twenty (20) days from receipt of notice from Artist of any such offer within which to notify Artist of Duopoly's election to accept said offer. Notice to Duopoly of any such offer must be in writing, set forth all details of such offer and contain the signature of both the offeror and offeree, acknowledging the validity of the offeror's offer and the offeree's willingness to accept such offer. Duopoly shall be deemed to have accepted Artist's offer by acceptance of all the terms thereof reducible to a determinable amount of money. If Duopoly does not accept any offer of which Artist duly notifies Duopoly, and Artist does not enter into the employ of or provide services for the third party on the terms and conditions set forth in said offer, the terms of this Paragraph shall apply to any subsequent offer to or by Artist. For purposes of this Paragraph 2(c) hereof, a station shall be deemed to be within Duopoly's DMA if any location within the community of license of such station or the transmitter of such station is broadcast within Duopoly's DMA.

(d)  TERMINATION OF EMPLOYMENT: Any termination of this Agreement, whether by expiration or otherwise as provided hereunder, shall also constitute a termination of employment with Duopoly, unless a successor agreement is executed or employment otherwise continues as provided below. Severance and other termination benefits shall be governed by the terms of any collective bargaining agreement applicable to Artist's employment. If Artist is not covered by any such agreements, severance and termination benefits shall be governed by Duopoly's policy in effect at the time of termination. If, by the expiration date of this Agreement, no successor agreement is executed by Artist and Duopoly and, at Duopoly's request, Artist continues to provide Artist's personal services to Duopoly, any such continued employment of Artist by Duopoly shall be day-to-day, terminable at the will of either party for any reason and with only such notice as may be required by any collective bargaining agreement applicable to Artist. Unless otherwise expressly agreed to in writing by Duopoly, compensation and other terms and conditions of such day-to-day employment shall be governed solely by the terms of any such applicable collective bargaining agreement. Further, the time periods referred to in the First Refusal clause set forth in this Agreement shall be

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

deemed to commence pursuant to the provisions contained in Paragraph 2(c) unless Artist continues employment past the expiration date of the Agreement. In that case, such time periods shall be deemed to commence on the date Artist's employment with Duopoly is ended. If Duopoly does not request Artist to continue providing Artist's personal services after expiration of this Agreement, and Artist has not advised Duopoly of Artist's intention to terminate Artist's employment with Duopoly upon expiration of this Agreement, then Artist's employment shall be deemed terminated by Duopoly. If Duopoly does request Artist to continue providing Artist's personal services after expiration of this Agreement, but Artist declines to provide Artist's personal services, then Artist's employment shall be deemed terminated by Artist.

3. **SALARY AND BENEFITS.**

(a) COMPENSATION: As full compensation for performance by Artist of all Artist's obligations hereunder and all rights granted herein, Duopoly shall pay Artist, less any deductions required by law or otherwise mutually agreed upon, in accordance with Duopoly's payroll practices, as follows:

| TERM | ANNUAL SALARY |
|---|---|
| First Contract Year (June 1, 2022 - May 31, 2023) | ▮ |
| Second Contract Year: (June 1, 2023 – May 31, 2024) | ▮ |
| Third Contract Year (June 1, 2024 - May 31, 2025) | ▮ |

(b) REIMBURSEMENT: Duopoly shall reimburse Artist for authorized and actual out-of-pocket transportation and reasonable expenses incurred in the performance of assigned services, outside the metropolitan area in which Duopoly is located, in accordance with Duopoly's policies with respect thereto. Duopoly will make such reimbursement only after submission of paid receipts or other evidence of Artist's expenses satisfactory to Duopoly and consistent with standard accounting policies and in no event will such expenses be reimbursed to Artist later than December 31 of the year following the year in which Artist incurs the related expenses.

(c) COMPENSATION ADJUSTMENT: If this Agreement is terminated at any time other than at the end of a Contract Year, the compensation for the year during which

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

such termination occurs shall be reduced by 1/52nd for each full week and by an amount equal to 1/260th for each workday in any period other than a full week remaining in that Contract Year.

   (d) PAY OR PLAY: Nothing herein contained shall be deemed to obligate Duopoly to use Artist's services hereunder or to broadcast any program, and Duopoly shall have fully discharged its obligations hereunder by payment to Artist of the applicable compensation and applicable benefits set forth in this Paragraph 3. Further, to the extent that Duopoly's exercise of its rights under this Paragraph is considered a "separation from service" within the meaning of Internal Revenue Code Section 409A and which results in Artist's loss of eligibility for medical and/or dental benefits under Duopoly's then effective benefit plans, Artist shall receive Company medical and/or dental insurance coverage for Artist and, if applicable, any dependents, to the extent Artist would be eligible for such coverage under the applicable plans were he or she still in active employment by the station and at Artist's applicable contribution level (on an after-tax basis) and at a similar coverage level to that which Artist was receiving on the day Artist's pay or play period began, until the earlier of: (a) the end of the Term; or (b) the date on which Artist becomes eligible for medical and dental coverage from a third-party employer. The cost of Duopoly's share of the contribution for this medical and/or dental insurance coverage shall be treated as taxable income to Artist. After the extended coverage provided for in this Paragraph ends, Artist and, if applicable, any dependents shall be entitled to elect coverage under the benefit plans at their own expense in accordance with the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. section 1161 et seq. ("COBRA") and the terms of such plans.

   The parties agree that, consistent with the provisions of Section 409A of the Internal Revenue Code of 1986, as amended, and the regulations and guidance promulgated thereunder (together, "Section 409A"), the following in-kind benefit rules shall also apply: (a) the amount of in-kind benefits paid during a calendar year will not affect the in-kind benefits in any other calendar year; and (b) Artist's right to in-kind benefits is not subject to liquidation or exchange for another benefit.

   In the event of Artist's death, this Agreement shall terminate and Duopoly shall make all payments accrued and not yet paid as of the date of Artist's death. Duopoly may make such payments to Artist's legal representative or representatives.

   (e) VACATIONS AND HOLIDAYS: Duopoly agrees to provide Artist with vacation and holidays during each year of this Agreement in accordance with the then-current SAG-AFTRA collective bargaining agreement applicable to Artist or, in the absence of such agreement, in accordance with then current Paramount Global ("Company") policy applicable to employees who are eligible to receive vacation time off based upon years of service at the

Company. For avoidance of doubt, in no event shall the Company's vacation policy applicable to employees who are exempt from overtime apply to Artist. The periods during which the vacation shall occur shall be mutually agreed upon between the parties; but in the event of any failure to so agree, Duopoly shall designate such periods, and, in so doing, Duopoly will endeavor to accommodate Artist.

(f) BENEFITS: To the extent Artist may be entitled to participate in any pension plan or investment plan for eligible employees of Duopoly, or to participate in any other employment benefit plan, Artist's benefit bases shall be as provided for in the applicable benefit plan. Nothing herein shall affect the right of Duopoly to terminate or modify any such pension plan, investment plan, or other benefit plan in whole or in part at any time.

(g) OVERSCALE: To the extent the compensation payable to Artist under this Agreement is in excess of any applicable union minimum scale in a collective bargaining agreement to which Duopoly is a party, Duopoly shall have the right to apply such excess against any extra payments (including, without limitation, overtime, penalties, program fees, syndication and/or reuse fees) which would otherwise be due Artist under any such collective bargaining agreement because of the exercise of rights granted to Duopoly under this Agreement. Duopoly's ability to credit compensation payable to Artist in excess of the union minimum scale figure which may be contained in such collective bargaining agreement is limited only by the restrictions expressly contained in that agreement.

(h) COMPLIANCE WITH LAW: Duopoly's compliance with any enactment, rule, order or act of government or governmental instrumentality (whether federal, state or local) which in any way or at any time(s) limits or restricts the amount or rate of compensation which may lawfully be payable hereunder shall not constitute a breach hereof and Artist shall perform services hereunder at whatever compensation may then be lawful.

(i) SECTION 409A: To the extent applicable, it is intended that the compensation arrangements under this Agreement be in full compliance with Section 409A of the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder ("Code Section 409A"). This Agreement shall be construed in a manner to give effect to such intention. In no event whatsoever (including, but not limited to as a result of this paragraph or otherwise) shall Duopoly be liable for any tax, interest or penalties that may be imposed on Artist under Code Section 409A. Neither Duopoly nor any of its affiliates shall have any obligation to indemnify or otherwise hold Artist harmless from any or all such taxes, interest or penalties, or liability for any damages related thereto. Artist acknowledges that he or she has been advised to obtain independent legal, tax or other counsel in connection with Code Section 409A.

4.   **SERVICES EXCLUSIVE.**

Artist's services shall be completely exclusive to Duopoly during the term of this Agreement and during such term Artist will not perform services of any nature for, or permit the use of Artist's name, likeness, voice or endorsement by, any person, firm or corporation or on Artist's own account, except with the prior written consent of Duopoly's General Manager. Artist acknowledges that Artist's artistic and professional services and the rights and privileges granted to Duopoly hereunder are unique, which gives them a peculiar value, the loss of which cannot be adequately or reasonably compensated in damages in an action at law. Artist further acknowledges that Artist's failure to perform Artist's obligations hereunder, or to otherwise fail to comply with any provision of this Agreement will cause Duopoly irreparable injury or damage. Duopoly shall be entitled to injunctive and other equitable relief to prevent any breach of this Agreement by Artist. Resort by Duopoly to injunctive or other relief, however, shall not be considered a waiver of any other rights Duopoly may have against Artist for damages or otherwise.

5.   **BEST EFFORTS.**

Artist shall devote Artist's best talents, efforts and abilities in connection with Artist's services hereunder, and shall attend all rehearsals, recording sessions, if any, reasonable program and promotion conferences and publicity and photographic sessions. Artist shall perform the duties and services hereunder to the best of Artist's ability subject to the direction and control of Duopoly at such place or places and at such times as Duopoly may from time to time determine. Artist shall perform such duties and services on such programs as Duopoly shall from time to time determine and such services shall include, without limitation, performing leads-into and leads-out of commercial and promotional announcements. To promote the programs hereunder, Duopoly's services and/or the products and services of any sponsor (provided, however there is no direct endorsement by Artist of any product or service), Artist shall, at Duopoly's request, appear and perform at meetings or other Duopoly-related events, provided that there is no interference with Artist's other prior contractual commitments, and that Artist is reimbursed for Artist's reasonable expenses in connection therewith. Artist shall comply with such rules and policies as Duopoly may from time to time adopt. Any failure to comply with such rules, policies or directions shall be deemed a material breach of this Agreement.

6.   **WARRANTIES AND INDEMNITIES.**

(a)   FREEDOM TO CONTRACT: Artist warrants that Artist has the right and

power to enter into and fully perform this Agreement.

(b) ARTIST'S IDEAS: Artist warrants that the ideas, creations, literary, musical, and artistic material and intellectual properties (hereinafter collectively referred to as the "Materials") created or developed by Artist hereunder will be Artist's own, original creation and/or development, except for Materials in the public domain and Materials which Artist is fully licensed to use, and that the Materials and use thereof will not violate any law or infringe upon or violate any rights of any kind or nature whatsoever of any person, firm or corporation.

(c) INDEMNITIES: Artist will at all times (notwithstanding the expiration or termination of this Agreement) indemnify and hold harmless Duopoly, Duopoly's sponsors, if any, their advertising agencies, if any, and any licensee of Duopoly and all of their parents, subsidiaries and affiliates and all of their respective officers, directors, agents and employees, from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable counsel fees, arising out of: (i) the use of any Materials furnished by Artist hereunder; (ii) any breach by Artist of any warranty or agreement made by Artist herein; and (iii) any acts done or words spoken by Artist in connection with the production, rehearsal or broadcast of any program unless such acts or words shall have first been supplied or expressly authorized by Duopoly. Duopoly will at all times indemnify and hold harmless Artist from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable counsel fees, arising out of the use of any materials or services furnished by Duopoly in connection with the production, rehearsal or broadcast of any of the programs; provided, however, that Artist shall promptly notify Duopoly of any claim or litigation to which the indemnity set forth in this sentence applies; and provided further, that at Duopoly's option, Duopoly may assume the defense of any such claim or litigation, to which the indemnity set forth in this sentence applies, in which event Duopoly's obligations with respect thereto shall be limited to the payment of any judgment or settlement approved by Duopoly in connection therewith.

7. **NONPERFORMANCE.**

(a) TERMINATION FOR CAUSE: Duopoly may, by written notice, terminate Artist's employment immediately for cause. Cause shall include, without limitation, fraud, misrepresentation, insubordination, gross misconduct, theft or embezzlement of Duopoly assets, violations of law or company policies, conduct detrimental to Duopoly, its businesses, its employees or the public, or a material breach of the provisions of this Agreement, including specifically the repeated failure to perform the required services hereunder. If Duopoly exercises such right of termination, its obligations under this Agreement shall thereupon terminate and Duopoly shall thereafter be released and discharged of and from any further obligations

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

hereunder, except for payment of any monies previously due and owing to Artist and as yet unpaid. In addition, Duopoly may, by written notice, suspend Artist's employment immediately for cause. If Duopoly exercises such right of suspension, Artist's obligation to render services and Duopoly's obligation to provide salary shall be suspended for the period of time set forth in the notice; but in no event shall such suspension exceed a period of time equal to two (2) consecutive months. Notwithstanding anything to the contrary in the foregoing, no such suspension or disciplinary sanction shall be imposed if specifically prohibited by any applicable collective bargaining agreement in effect at the time such suspension is imposed; nor shall any such action by Duopoly serve to extend this Agreement or be construed to be a waiver of any other right or remedy granted to Duopoly herein.

(b) INCAPACITY: If, due to a physical or mental disability Artist becomes unable to perform all the essential functions of the applicable job description and/or the services to be provided pursuant to this Agreement, whichever is applicable even with a reasonable accommodation of such disability, Duopoly may suspend or terminate this Agreement at its sole discretion, without any further obligation to Artist under this Agreement. In the event of a suspension or termination of this Agreement pursuant to this Paragraph 7(b), benefit plan coverage applicable to Artist will be available to Artist to the extent provided by the terms and conditions of such plan. Whether or not Duopoly suspends or terminates this Agreement, Duopoly will have no obligation to, but may at its option and in its sole discretion, pay Artist the pro rata share of Artist's Annual Salary applicable to any portion or all of such period during which, due to any personal illness or injury, whether or not it constitutes a disability, Artist fails to provide services or materials (if any) required to be furnished by Artist pursuant to this Agreement. Should a question arise as to Artist's ability to perform all the essential functions of the work required under this Agreement, Artist agrees to cooperate fully in assisting Duopoly in making a determination of whether a physical or mental disability affects Artist's ability to perform those essential functions with or without a reasonable accommodation, including, without limitation, submission to medical examinations by licensed health care providers designated by Duopoly. Artist will also be asked to help in determining if a reasonable accommodation can be made. Duopoly will give Artist prompt notice of the action it intends to take upon determining that Artist cannot perform all essential functions of the applicable job description and/or the services to be provided pursuant to this Agreement.

8. **FORCE MAJEURE.**

In the event that because of: act of God; inevitable accident; fire; lockout, strike or other labor dispute; riot or civil commotion; act of public enemy; enactment, rule, order or act of government or governmental instrumentality (whether federal, state, local or foreign); failure of technical facilities; or other cause of similar nature beyond the control of Duopoly, the normal

broadcasting of Duopoly is prevented or canceled, Duopoly may suspend the performance of services by Artist and the payment of compensation hereunder during the continuation of such prevention or cancellation. Duopoly, nevertheless, shall pay to Artist such sums as shall be required to be paid to Artist pursuant to any applicable collective bargaining agreement to which Duopoly is a party and which is in effect during the period of any such suspension. No such suspension shall operate to extend the term of this Agreement.

9. **NAME AND LIKENESS.**

Duopoly may, and may grant to others the right to, reproduce, print, publish or disseminate in any medium, Artist's name, portrait, picture, likeness and voice, and biographical material concerning Artist, as news or information, for the purpose of trade, or for advertising purposes, including, without limitation, "institutional" advertising (i.e., advertising designed to create good will and prestige and not for the purpose of selling any specific product or service), and including, without limitation, the advertising or promotion of the programs and, in connection therewith, the products or services of any sponsor thereof; provided, however, that no direct endorsement by Artist of any product or service shall be used without Artist's written consent. The rights granted in this Paragraph 9 shall continue for so long as Duopoly shall have the right to use or exploit any program in any manner.

10. **COMPLIANCE WITH POLICY.**

Artist represents that Artist has read Sections 317 and 508 of the Communications Act of 1934 as amended, copies of which are attached. Artist warrants and represents that: (i) Artist will comply with any and all policies, rules and regulations as Duopoly may from time to time adopt in order to fulfill its responsibilities as a broadcaster with respect to said Section 317 and the public policy involved; (ii) Artist has not accepted or agreed to accept and will not accept or agree to accept directly or indirectly without first obtaining the approval of Duopoly's General Manager any money, service or other valuable consideration from anyone other than Duopoly for the inclusion of any matter in any program or program matter which is intended for broadcast by Duopoly; and (iii) Artist will comply with any and all corporate policies, rules and regulations applicable to Artist, including, without limitation, company policies regarding conflicts of interest.

11. **CONFIDENTIALITY.**

Artist acknowledges that, in the course of Artist's employment, Artist will have access to confidential information, trade secrets, records, data, specifications and secret inventions and other knowledge (hereinafter collectively referred to as the "Confidential

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

Information") owned by or in the possession of Duopoly and/or its related companies. All Confidential Information shall be and remain the property of Duopoly and/or its related companies, as the case may be. Artist agrees that during and after Artist's employment by Duopoly, whether pursuant to this Agreement or otherwise, Artist shall not, without the prior written consent of Duopoly, disclose to any individual or entity for any reason or purpose whatsoever, other than in the regular course of business of Duopoly and/or its related companies, any Confidential Information of Duopoly and/or its related companies.

### 12. MATERIALS.

(a) <u>OWNERSHIP OF MATERIALS</u>: The programs and all elements thereof and all recordings of the programs, as between Artist and Duopoly, shall be the sole and exclusive property of Duopoly and may be used, exploited, broadcast and rebroadcast, by Duopoly and its licensees in any manner (including, without limitation, the editing and re-editing of any recorded program for rebroadcast) and in any media, throughout the world in perpetuity on a sustaining or any commercial basis on behalf of any advertisers (including, without limitation, commercially sponsored network broadcasts thereof). The word "broadcast" as used in this Agreement means broadcast, transmission and exhibition by means of television (including, without limitation, cable, closed circuit or pay television) or radio, and television and radio devices, methods or improvements now or hereafter developed. Any program may be produced for original broadcast in whole or in part on a live basis (which includes, without limitation, the making of recordings thereof by Duopoly for broadcast subsequent to live broadcast) or, as Duopoly may at any time or from time to time elect, may be produced for original broadcast in whole or in part by means of recording. The terms "recording" and "recordings", as used herein, shall mean and include any recording or recordings made (whether before, during or after a broadcast transmission) by tape, wire, film, disc, electronic recording, computer file or any other similar or dissimilar method of recording aural and/or visual portions of television and radio programs, whether now known or hereafter developed, including, without limitation, the photography of such programs on film in a manner similar to that used in the production of motion pictures. Duopoly shall also have the right to assign Artist to provide services in connection with: (i) programs produced by Duopoly solely for distribution to other media outlets, including, without limitation, any television or radio network; and (ii) any distribution outlet in Duopoly's market now owned or hereafter acquired by Paramount Global or any of its subsidiaries or affiliates. Unless Duopoly's contract with Artist's union, if any, specifically requires otherwise, Duopoly shall not be liable for payment of additional compensation to Artist for such additional assignment or use and the compensation contained in Paragraph 3 of this Agreement will constitute full consideration for all such assignments and uses.

(b)   DEVELOPMENT: All Materials created or developed by Artist pursuant to Artist's employment hereunder (whether alone or in conjunction with any other person), or which Artist may disclose to Duopoly during the term hereof and any names, other than Artist's own, which Duopoly may use to identify Artist, shall be the sole and absolute property of Duopoly for any and all purposes whatsoever, and Artist agrees that Artist does not have, and will not claim to have, either under this Agreement or otherwise, any right, title or interest of any kind or nature whatsoever in or to such Materials or names.

### 13. PUBLIC MORALS.

Artist shall act at all times with due regard to public morals, conventions and CBS Television Stations' policies. If Artist shall have committed or does commit any act, or if Artist shall have conducted or does conduct himself/herself in a manner, which shall be an offense involving moral turpitude under federal, state or local laws, or which might tend to bring, Artist to public disrepute, contempt, scandal or ridicule, or which might tend to reflect unfavorably upon Duopoly, its sponsors, if any, or their advertising agencies, if any, or otherwise injure the success of the programs, Duopoly shall have the right to terminate this Agreement upon notice to Artist given at any time on or before the thirtieth (30th) day following the date on which the commission of such act, or such conduct, shall have become known to Duopoly or publicly known or following completion of any Duopoly investigation of the conduct, whichever is later. Artist's involvement in the manufacture, distribution, sale, purchase, possession or use of an illegal drug shall be deemed to be an offense within the ambit of this Paragraph 13, giving Duopoly the right to terminate this Agreement.

### 14. UNION OBLIGATIONS.

Artist represents that Artist is or will become and will remain, to the extent necessary to enable the performance of this Agreement, a member in good standing of all labor unions or guilds, membership in which may be lawfully required for the performance of Artist's services hereunder. This Agreement is under and subject to the applicable requirements of Duopoly's agreements, if any, with any such organization. Artist shall waive any provisions in any such agreements that have been waived by such organization.

### 15. CORRESPONDENCE.

Duopoly, the programs' advertisers, and their advertising agencies, any other stations over which the programs are broadcast and any licensee of Duopoly may open correspondence intended for Artist which any of them receives and may answer or cause to be answered any correspondence relating to Artist's services hereunder. Duopoly will use its best

efforts to forward unopened to Artist mail marked "Personal".

### 16.  GENERAL PROVISIONS.

(a) WAIVER: A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained in this Agreement shall be cumulative, and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

(b) NOTICE: Except as otherwise specifically provided herein, all notices hereunder shall be in writing and shall be given by personal delivery, registered or certified mail or nationally recognized overnight courier service (prepaid), at the respective addresses hereinabove set forth, or such other address or addresses as may be designated by either party. Such notices shall be deemed given when mailed or delivered to or picked up by courier, except that notice of change of address shall be effective only from the date of its receipt. A copy of each notice sent to Duopoly shall be sent simultaneously to the CTS General Counsel, CBS Law Department, 51 West 52nd Street, New York, New York 10019.

(c) GOVERNING LAW: The validity, interpretation and legal effect of this Agreement and all matters and issues collateral thereto shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York, with respect to the determination of any claim, dispute or disagreement, which may arise out of the interpretation, performance or breach of this Agreement.

(d) ENFORCEABILITY: The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision of this Agreement.

(e) ASSIGNMENT: Neither Artist nor Duopoly may assign this Agreement without the prior written consent of the other, except that Duopoly may assign this Agreement and any and all rights herein to any party acquiring Duopoly, or to any corporation or entity owned or controlled by or controlling Paramount Global.

(f) ENTIRE AGREEMENT: This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof, superseding any previous oral or written agreements and cannot be changed or terminated orally.

(g)  HEADINGS: Paragraph titles are for convenience only and shall not affect the interpretation of any paragraph of this Agreement.

(h)  CONSTRUCTION: Each party has had an opportunity to negotiate fully the terms of this Agreement and to consult with counsel with respect thereto. Accordingly, any rule of construction seeking to resolve any ambiguities against the drafting party shall not be applicable in the interpretation of this Agreement.

(i)  SEVERABILITY: Should any valid federal or state law or final determination of any administrative agency or court of competent jurisdiction affect any provision of this Agreement, the provision or provisions so affected shall, to the fullest extent possible, be automatically deemed amended to give the fullest effect possible to the original intent of the affected provision (and if not capable of being so amended, only the provisions so affected shall be automatically void) and this Agreement, as so amended, shall continue in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

WBZ-TV/WSBK-TV

By: *Justin Draper*
**Justin Draper**
President and General Manager

Dated: 5/16/2022

ACCEPTED AND AGREED:

By: *kate Merrill*
**Katherine Merrill Dunham**

Dated: 5/16/2022

SECTION 317 OF THE COMMUNICATIONS ACT OF 1934, as amended

Announcement With Respect to Certain Matter Broadcast

(a) (1) All matter broadcast by any radio* station for which any money, service or other valuable consideration is directly or indirectly paid, or promised to or charged or accepted by, the station so broadcasting, from any person, shall, at the time the same is so broadcast, be announced as paid for or furnished, as the case may be, by such person: provided, that "service or other valuable consideration" shall not include any service or property furnished without charge or at a nominal charge for use on, or in connection with, a broadcast unless it is so furnished in consideration for an identification in a broadcast of any person, product, service, trademark or brand name beyond an identification which is reasonably related to the use of such service or property on the broadcast.

(2) Nothing in this section shall preclude the Commission from requiring that an appropriate announcement shall be made at the time of the broadcast in the case of any political program or any program involving the discussion of any controversial issue for which any films, records, transcriptions, talent, scripts, or other material or service of any kind have been furnished, without charge or at a nominal charge, directly or indirectly, as an inducement to the broadcast of such program.

(b) In any case where a report has been made to a radio station, as required by Section 508 of this Act, of circumstances which would have required an announcement under this section had the consideration been received by such radio station, an appropriate announcement shall be made by such radio station.

(c) The licensee of each radio station shall exercise reasonable diligence to obtain from its employees, and from other persons with whom it deals directly in connection with any program or program matter for broadcast, information to enable such licensee to make the announcement required by this section.

(d) The Commission may waive the requirement of an announcement as provided in this section in any case or class of cases with respect to which it determines that the public interest, convenience, or necessity does not require the broadcasting of such announcement.

(e) The Commission shall prescribe appropriate rules and regulations to carry out the provisions of this section.

\*    All references to Radio apply in like manner to Television.

DocuSign Envelope ID: 45D55BDF-3322-4431-B9D5-277A27E6E132

## SECTION 508 OF THE COMMUNICATIONS ACT OF 1934, as amended

### Disclosure of Certain Payments

(a)  Subject to subsection (d), any employee of a radio* station who accepts or agrees to accept from any person (other than such station), or any person (other than such station) who pays or agrees to pay such employee, any money, service, or other valuable consideration for the broadcast of any matter over such station shall, in advance of such broadcast, disclose the fact of such acceptance or agreement to such station.

(b)  Subject to subsection (d), any person who, in connection with the production or preparation of any program or program matter which is intended for broadcasting over any radio station, accepts or agrees to accept, or pays or agrees to pay, any money, service or other valuable consideration for the inclusion of any matter as a part of such program or program matter, shall, in advance of such broadcast, disclose the fact of such acceptance or payment or agreement to the payee's employer, or to the person for whom such program or program matter is being produced, or to the licensee of such station over which such program is broadcast.

(c)  Subject to subsection (d), any person who supplies to any other person any program or program matter which is intended for broadcasting over any radio station shall, in advance of such broadcast, disclose to such other person any information of which he has knowledge, or which has been disclosed to him as to any money, service or other valuable consideration which any person has paid or accepted, or has agreed to pay or accept, for the inclusion of any matter as a part of such program or program matter.

(d)  The provisions of this section requiring the disclosure of information shall not apply in any case where, because of a waiver made by the Commission under Section 317(d), an announcement is not required to be made under Section 317.

(e)  The inclusion in the program of the announcement required by Section 317 shall constitute the disclosure required by this section.

(f)  The term "service or other valuable consideration" as used in this section shall not include any service or property furnished without charge or at a nominal charge for use on, or in connection with, a broadcast, or for use on a program which is intended for broadcasting over any radio station, unless it is so furnished in consideration for an identification in such broadcast or in such program of any person, product, service, trademark, or brand name beyond an identification which is reasonably related to the use of such service or property in such broadcast or such program.

(g)  Any person who violates any provision of this section shall, for each such violation, be fined not more than $10,000 or imprisoned not more than one year, or both.

\*  All references to Radio apply in like manner to Television.