**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
|  | ) |  |
| KATHERINE MERRILL DUNHAM, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 25-12195-MJJ |
|  | ) |  |
| WBZ-TV, COLUMBIA BROADCASTING | ) |  |
| SYSTEM, INC., PARAMOUNT GLOBAL, | ) |  |
| INC., JASON MIKELL, JUSTIN DRAPER, | ) |  |
| and MICHAEL RODERICK, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**MEMORANDUM OF DECISION**

May 29, 2026

JOUN, D.J.

Katherine Merrill Dunham ("Plaintiff" or "Ms. Merrill") brings this action against WBZ-TV ("WBZ"), Columbia Broadcasting System, Inc. ("CBS"), Paramount Global Inc. ("Paramount"), Michael Roderick ("Roderick"), Paramount's Employee Relations investigator, Justin Draper ("Draper"), then-President and General Manager of WBZ, and Jason Mikell ("Mikell"), a meteorologist who joined WBZ in 2023 (together, "Defendants"). [Doc. No. 1]. Specifically, Plaintiff alleges that Defendants discriminated against her on the basis of her race and sex by failing to adequately investigate her complaint against a coworker and by treating Plaintiff differently than her male coworkers by broadly announcing Plaintiff's demotion to the entire staff. Additionally, Plaintiff alleges that Defendants conducted an incomplete investigation into complaints of racial bias filed against Plaintiff. That investigation concluded in a finding of

wrongdoing and was subsequently used to demote Plaintiff. Plaintiff disagrees with the conclusion of the investigation and alleges that the investigation and her subsequent demotion was made in furtherance of WBZ's efforts to diversify its staff and discriminate against white people. Finally, Plaintiff alleges that by announcing her demotion to the entire staff shortly after the conclusion of the investigation—which many of the staff at WBZ knew about—Defendants falsely implicated Plaintiff as racist.

Based on these allegations, Plaintiff brings the following causes of action: Counts I & II for gender/sex discrimination and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(k) and Mass. Gen. Laws c. 151B § 4 against Defendants WBZ, CBS, Paramount, and Draper; Count III for failure to adequately investigate in violation of Mass. Gen. Laws c. 151B § 4 against Defendants WBZ, CBS, Paramount, Draper, and Roderick; Count IV for Defamation against Defendants WBZ, CBS, Paramount, and Draper, and; Count V for tortious interference with advantageous business relations against Defendants Draper, Roderick, and Mikell.[1]

Defendants move to dismiss Counts I, IV, and V. [Doc. No. 8]. For the reasons set forth below, Defendants' Motion to Dismiss is <u>GRANTED</u>.

## I.    BACKGROUND

Plaintiff is a female journalist who worked for WBZ beginning in 2004 and was promoted in 2017 to co-anchor of WBZ's morning and noon broadcasts. [Doc. No. 1 at ¶¶ 1, 15–16]. WBZ is a local broadcast television station in Boston, Massachusetts that produces news programming and other regional content and is owned and operated by CBS. [*Id.* at ¶¶ 2, 15]. CBS is a national

---

[1] Plaintiff's Count VI for untimely payment of wages is dismissed as the parties agree that Defendants have paid Plaintiff the full amount of the missing pay alleged in the Complaint. *See* [Doc. No. 1 at ¶¶ 120–22; Doc. No. 9 at 7 n.2; Doc. No. 14 at 6].

commercial broadcast television and radio network of Paramount. [*Id.* at ¶ 3]. Paramount is a media corporation that owns and manages CBS and its affiliated stations and exercises control over both CBS and WBZ. [*Id.* at ¶¶ 3–5].

Draper was the President and General Manager of WBZ and Plaintiff's direct supervisor. [*Id.* at ¶ 8]. During her career at WBZ, Plaintiff reported on major local events, including the 2013 Boston Marathon bombing, the 2004 Democratic National Convention, and the Boston Red Sox's 2004 World Series championship, as well as several Patriots Super Bowls. [*Id.* at ¶ 15]. Plaintiff earned multiple Emmy Awards and built a strong professional reputation during her tenure as a reporter and anchor. [*Id*. at ¶¶ 15–16].

According to the Complaint, in the early 2020s WBZ, CBS and Paramount adopted diversity, equity, and inclusion ("DEI") initiatives intended to increase diversity within their broadcast operations. [*Id*. at ¶¶ 20–23]. These initiatives included corporate goals related to increasing the representation of minority employees. [*Id*.]. The Complaint alleges that these diversity initiatives influenced hiring and personnel decisions at WBZ during the years before the events in this case. [*Id*. at ¶¶ 20–38]. In 2023, WBZ hired Jason Mikell ("Mikell"), a Black meteorologist from southern Mississippi who asked Plaintiff for assistance with the pronunciation of local town names after joining WBZ. [*Id.* at ¶ 36]. On February 22, 2024, Mikell made a sexually charged remark about Plaintiff on air, but Plaintiff alleges that WBZ did not discipline Mikell for that conduct. [*Id.* at ¶ 41]. On April 3, 2024, Plaintiff privately corrected Mikell's on-air pronunciation of a town name during a commercial break, after which Mikell publicly confronted Plaintiff and aggressively and loudly yelled at her on the studio floor. [*Id.* at ¶¶ 45–46]. Plaintiff immediately reported Mikell's conduct to WBZ's Human Resources department, but the company allegedly took no action to conduct an investigation into her complaint. [*Id.* at ¶¶ 46, 48].

On April 10, 2024, Paramount's Vice President of Employee Relations, Michael Roderick ("Roderick"), informed Plaintiff that the company was investigating allegations that she had treated coworkers differently because of their race, and the findings from that investigation were later relied upon by Justin Draper ("Draper"), then-President and General Manager of WBZ and Ms. Merrill's direct supervisor, when issuing Plaintiff a written warning and demoting her. [*Id.* at ¶ 49, 65–66, 73]. Plaintiff alleges that during the investigation into the complaints against her, Roderick interviewed several employees but failed to interview witnesses Plaintiff identified and mischaracterized statements Plaintiff made during the investigation. [*Id.* at ¶¶ 54–64, 69]. On May 17, 2024, immediately after Roderick informed Plaintiff that he had corroborated the complaints against her, Draper issued Plaintiff a written warning based on the investigation and then demoted Plaintiff from the Weekday Morning Show to working weekend nights. [*Id.* at ¶¶ 65–66, 72–73].

On May 20, 2024, Ms. Merrill did not come in to work, and Draper announced Plaintiff's demotion at two staff meetings attended by WBZ personnel. [*Id.* at ¶ 74–75]. Plaintiff alleges that Draper had not similarly publicly announced the demotions of male anchors at WBZ in the same manner. [*Id.* at ¶ 78]. Plaintiff alleges that after she was demoted, colleagues and union leaders informed her that WBZ treated her more harshly than male employees who had been accused or found to have engaged in wrongdoing. [*Id.* at ¶ 79]. For instance, Mikell was not disciplined for making a sexually charged comment about her on air, nor for publicly and aggressively confronting her on the studio floor. [*Id.*]. Plaintiff also alleges that an Asian male anchor was not demoted for making an on-air "Dirty Job" remark that allegedly carried racist undertones, and a Black male reporter was not disciplined after he physically threw another employee against a wall despite video recording evidence. [*Id.*]. Plaintiff contends that because of this discipline and her demotion,

she suffered loss of income, damage to the professional reputation, and emotional distress. [*Id.* at ¶¶ 81–85, 90].

## II.   LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim, a court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, courts "ignore[ ] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[ ] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[] if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

## III.   DISCUSSION

### A.   <u>Gender Discrimination (Count I)</u>

Defendants argue that Count I should be dismissed because Plaintiff has not plausibly alleged that any adverse action was taken against her as a result of her gender. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a)(1). Massachusetts law similarly prohibits discrimination based on "race, color, religious creed, national origin, sex, gender identity, sexual orientation" and additional immutable characteristics. Mass. Gen. Laws c. 151B § 4(1). To state a claim for disparate treatment, Plaintiff must plead facts supporting that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) her employer took an adverse

employment action against her; and (4) there is some evidence of a causal link between her protected status and the adverse employment action. *Evans v. Staples, Inc.*, 375 F. Supp. 3d 117, 123 (D. Mass. 2019) (citing *Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)).[2] Defendants appear to challenge only the fourth element, arguing that Plaintiff has failed to plausibly allege that her demotion was motivated by sex-based discrimination. I agree.

"A disparate treatment claim is a claim of intentional discrimination." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022). "Although to ultimately succeed on the claim, a disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action," the First Circuit has "explicitly held that plaintiffs need not plead facts in the complaint that establish a prima facie case under Title VII." *Id.* at 271 (citations omitted). "Rather, the complaint simply must contain facts that 'plausibly allege' that the plaintiff experienced a discriminatory employment action." *Id.* (citing *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)) (emphasis in original). "If, however, the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Waleyko v. Phelan*, 146 F.4th 89, 95 (1st Cir. 2025) (citation omitted). "Put another way, based on only the concrete facts alleged and reasonable inferences therefrom, the complaint must support a plausible finding that the adverse employment action was taken 'because of' the plaintiff's sex." *Id.* (citation omitted).

Plaintiff's allegations of sex discrimination are based on the following facts:

- She was informed by professional colleagues and senior leaders at SAG-AFTRA that by demoting Plaintiff, Defendants "treated her significantly more harshly than [they] had treated men at WBZ who had been accused of or been found to have engaged in wrongdoing." [Doc. No. 1 at ¶ 79];

---

[2] "Since claims under Chapter 151B and Title VII are evaluated under such a similar legal framework at this pleading stage, this Court need not and will not conduct the same analysis twice." *Tardiff v. Laborers Int'l Union of N. Am. Loc. Union 609*, No. 4:23-cv-40115, 2025 WL 2374000, at *4 (D. Mass. Aug. 15, 2025).

- "Defendant Mikell (who is a Black male) was not disciplined for making an inappropriate sexually-charged comment about Ms. Merrill on air, nor for publicly and aggressively confronting her on the studio floor" and Defendants "took no action to conduct an investigation into Ms. Merrill's complaint[s]" about this conduct. [*Id.* at ¶¶ 48, 79];

- "Mr. [Chris] Tanaka (who is an Asian male) was not demoted for the remark he made on air, making a 'Dirty Job' reference that was laden with racist undertones in on-air banter about Defendant Mikell's 'Do Your Job' segment." [*Id.* at ¶ 79];

- "[A] Reporter (who is a Black male) was not disciplined notwithstanding that, as a video recording evidences, he physically threw Carlos Patricio against a wall at WBZ." [*Id.*];

- "Defendant Draper did not broadly announce the demotions of any male anchors at WBZ TV as he did about Ms. Merrill's demotion." [Doc. No. 14 at 11].

Even construing the complaint's allegations in the light most favorable to Plaintiff, the court cannot reasonably infer that Plaintiff's demotion was a result of sex discrimination. First, the Complaint confirms that Plaintiff was demoted due to the findings of the investigation into complaints lodged against Plaintiff. [Doc. No. 1 at ¶ 73]. Plaintiff has not alleged that the findings of the investigation were a pretext to fire her based on her gender. But even reading the Complaint for pretext, the Complaint contains numerous allegations of an ongoing effort by WBZ to either demote or fire white employees in order to further its diversity aims. [*Id.* at ¶¶ 20–38]. While Plaintiff's race discrimination allegations may go to pretext, there is nothing in the complaint that supports pretext for gender discrimination. Additionally, while Plaintiff is correct that she has a right to plead alternative theories of liability, the court must still conduct an independent review of each claim. *See Limone v. United States*, 579 F.3d 79, 93 (1st Cir. 2009). Here, Plaintiff has not plausibly alleged that she was demoted because of her gender or that the reasons stated for her demotion were pretextual to cover up gender discrimination. *See, e.g.*, *Santay v. Ice House LLC*, No. 24-cv-11583, 2024 WL 4804967, at *4 (D. Mass. Nov. 15, 2024) (dismissing gender discrimination claim where Plaintiff did not "allege any facts from which the Court can draw the inference that

7

Defendant terminated her because of her . . . sex" and did not "allege[] any facts to indicate that this firing was a pretext for discrimination").

Plaintiff's citation to a few incidents in which her male colleagues were not similarly disciplined also hold little weight. "[T]he fact that [another coworker] was not disciplined or terminated in the same manner as [Plaintiff] has no bearing on whether their disparate treatment corresponded with their sexes." *Waleyko*, 146 F.4th at 97 (citations omitted). The court found similarly in *Mekonnen*:

> In pleading her cause of action for sex-based discrimination, Plaintiff only alleges that her employer treated male employees more favorably by not taking action against them when they violated the company's rules and that her replacement was male. Whether or not Plaintiff is referring to her allegation that she was treated differently than Mr. Abdelmohsen or insinuating that male employees were not terminated for committing the same errors that she allegedly committed which lead to her termination, Plaintiff does not allege facts suggesting that her alleged disparate treatment was *based on* her sex. Accordingly, this claim must fail.

*Mekonnen v. ABM Parking Servs., Inc.*, No. 14-12389, 2014 WL 5112110, at *4 (D. Mass. Oct. 10, 2014) (emphasis in original). Here, too, the difference in discipline between Plaintiff and her male coworkers is too attenuated to establish a causal nexus between her gender and her demotion. Likewise, the fact that no investigation was conducted and no discipline was taken in connection with Plaintiff's complaints against Defendant Mikell does not establish that her own demotion was a result of her gender.

Finally, while the court acknowledges that Defendant Draper's public announcement of the demotion may have been upsetting to Plaintiff, the announcement itself came after the decision to demote her and thus cannot establish a discriminatory motive leading to Plaintiff's demotion.

For these reasons, Count I is dismissed.

### B.   Defamation (Count IV)

Defendants next move to dismiss Plaintiff's defamation claim. "To establish a defamation claim under Massachusetts law, four elements are required: (1) that the defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss." *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citation omitted). "The question of whether a statement is reasonably susceptible of a defamatory meaning is a threshold question for the court." *Id.* "A communication is susceptible to defamatory meaning if it would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Id.* (quoting *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005)). "When making such a determination, the court must analyze the statement in light of the totality of the circumstances, including the entire context of the publication." *Id.* (quoting *Amrak Prods.*, 410 F.3d at 73).

Plaintiff's defamation claim is premised on her allegations that on May 20, 2024, Draper, in two separate staff meetings, publicly announced to all WBZ personnel that Plaintiff had been demoted. [Doc. No. 1 at ¶ 75]. Plaintiff alleges that demoting her in the context of the investigation sent a false message to her professional colleagues—many of whom were aware of the investigations into Ms. Merrill due to circulating rumors—that she had engaged in serious wrongdoing or that she was demoted because she was racist. [*Id.* at ¶ 75–76]; [Doc. No. 14 at 16]. Plaintiff alleges that Defendant Draper's unnecessarily broad announcement of her demotion to the staff at WBZ was humiliating and that in so doing, Defendant Draper acted with malice and ill will. [Doc. No. 1 at ¶ 77].

9

"The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation. A statement cannot be defamatory if it is substantially true." *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102 (D. Mass. 2006). Here, there is no question that Defendant Draper's announcement regarding Plaintiff's demotion was true or at the very least, substantially true. However, Plaintiff argues that "under Massachusetts law, even a true statement can form the basis of a libel action if the plaintiff proves that the defendant acted with 'actual malice.'" *Noonan v. Staples, Inc.*, 556 F.3d 20, 28 (1st Cir. 2009) (citing Mass. Gen. Laws ch. 231, § 92).

It is important to clarify what "actual malice" means in this context. Under the relevant Massachusetts statute, "actual malice" has been defined as "actual malevolent intent or ill will." *Id*. However, "the Supreme Court has explained that actual malice in the public-figure context is different than 'common-law malice' or 'ill will,' which is sometimes required under state law." *Id.* (citing *Cantrell v. Forest City Pub. Co.*, 419 U.S. 245, 251–252 (1974)). The "Supreme Court has consistently held in defamation cases that, in order to avoid offending a publisher or broadcaster's First Amendment rights, a plaintiff must establish the existence of a 'defamatory falsehood.'" *Shaari v. Harvard Student Agencies, Inc.*, 427 Mass. 129, 131 (1998) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974)). As such, "[w]here the plaintiff is deemed a 'public figure,' the Court has expressly concluded that the First Amendment 'absolutely prohibits punishment of truthful criticism' . . . [i]f an individual 'has published the truth, and no more [about a public person], there is no sound principle which can make him liable, even if he was actuated by express malice.'" *Id.* (citing *Garrison v. Louisiana,* 379 U.S. 64, 73, 78 (1964)). Additionally, "[t]his exception to the truth defense is not constitutional when applied to matters of public concern." *Noonan*, 556 F.3d at 28 n.7. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when

10

it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (citation omitted).

Defendants argue that Massachusetts' "ill will" standard cannot be applied because the alleged defamatory speech is a matter of public concern and Ms. Merrill is a public figure. Defendants argue that "Merrill alleges the communication was that a morning news anchor at a major network affiliate was demoted for racist conduct—this is speech that implicates a matter of public concern." [Doc. No. 15 at 8 n.6]. I agree with Defendants that the defamatory speech at issue can at the very least be considered a matter of public concern. But even if the "ill will" standard were to apply, I find that the allegations are insufficient to amount to a showing of ill will on the part of Draper. Plaintiff argues that she sufficiently alleges actual malice because she alleges that WBZ/CBS had a corporate agenda to promote reverse discrimination, they did not similarly demote or broadly announce the demotions of male anchors accused of misconduct, and that Defendant Roderick failed to interview certain witnesses that Plaintiff identified when investigating either her complaints against other coworkers or the complaints against Plaintiff. Plaintiff's arguments miss the mark for a few reasons.

First, the allegations regarding the corporate Defendants' efforts to implement their DEI efforts are not sufficiently tied to any allegation of ill will against Plaintiff specifically. Second, the public announcement of Plaintiff's demotion as compared to other demotions is not tied to any other conduct or speech by Draper himself that can lead to an inference of ill will. In *Noonan*, for example, the plaintiff was fired from his job for allegedly padding expense reports. 556 F.3d at 22. The employer there sent a mass email to 1,500 employees informing them that the plaintiff had been fired for violating the company's travel and expense policy. *Id.* The First Circuit found that there was evidence of ill will because in the employer's twelve years with the company, he had

never fired an employe by name in a mass email communication, there was evidence that the employer's reason for sending the mass email was pretextual, and a jury could reasonably conclude that the employer singled out the employee in order to humiliate him. *Id.* at 30. Here, there is no allegation that Draper announced to the staff the reason for Ms. Merrill's demotion. The only other context Plaintiff provides is that the demotion came a few days after the conclusion of the investigation, as well as her conclusory assertion that because Draper had not similarly announced demotions of other employees in this manner, he must have done so here to humiliate Plaintiff. *See McKee v. Cosby*, 236 F. Supp. 3d 427, 443 (D. Mass.), *aff'd,* 874 F.3d 54 (1st Cir. 2017) ("At bottom, any implication supporting a defamation claim must derive primarily from the specific language used (or the 'gist' derived from that language), not *merely* the known or speculative circumstances surrounding a given statement.") (emphasis in original).

Lastly, Plaintiff's allegation that Defendant Roderick failed to adequately investigate her complaints or the complaints against her do not go toward whether Draper—the speaker of the defamatory statement—had actual malice. She does not allege that Draper had a reason to believe that the findings of the investigation were false, and she otherwise only relies on her speculative allegations that WBZ, CBS, and Paramount tasked Defendant Roderick to investigate the claims against her in order to further their DEI efforts.[3]

For these reasons, Plaintiff's defamation claim must be dismissed.

## C. Tortious Interference (Count V)

Finally, Defendants move to dismiss Plaintiff's claims for tortious interference against three individual Defendants: Mikell, Roderick, and Draper. A claim for tortious interference with business relations requires the plaintiff to prove the following elements: "(1) the plaintiff was

---

[3] I need not reach the parties' arguments regarding the conditional privilege as I find that the defamation claim fails.

involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *ITyX Sols., AG v. Kodak Alaris Inc.*, No. 16-cv-10250, 2018 WL 2392004, at *13 (D. Mass. May 25, 2018), *aff'd,* 952 F.3d 1 (1st Cir. 2020). "Massachusetts courts will find the improper motive element met when a defendant exhibits 'actual malice' or 'a spiteful, malignant purpose, unrelated to [a] legitimate corporate interest.'" *Hamann v. Carpenter*, 937 F.3d 86, 90 (1st Cir. 2019) (citing *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 43 (1st Cir. 2011)). I find that Plaintiff has failed to plead actual malice on the part of any of the individual Defendants with respect to this claim.

As to Defendant Mikell, Plaintiff alleges that he "acted with malice and/or improper motive when [he] alleged Ms. Merrill discriminated against [him], and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount." [Doc. No. 1 at ¶ 111]. This allegation is conclusory. Putting aside that Defendant Mikell has a right to report incidents in his workplace, Plaintiff has not made any allegations that Mikell's complaint was fabricated, exaggerated, or made with the intent to interfere with Ms. Merrill's career. Plaintiff's cited cases all involved complaints that were alleged to be false. Here, Plaintiff does not claim that the statements underlying the complaints made against her were false—rather, she disagrees with Mikell's characterization or interpretation of those statements as microaggressions. This is simply not enough to show actual malice.

As to Defendant Roderick, Plaintiff alleges that "Defendant Roderick acted with malice and/or improper motive in the conduct of his investigation, and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount." [*Id.* at ¶ 114]. I agree with Defendants that Plaintiff's allegations here are similar to the allegations found to be

13

insufficient in *Dick v. Wood Hole Oceanographic Inst.*, No. 21-cv-10007, 2021 WL 3146049, at *8 (D. Mass. July 26, 2021). There, the court held that the findings of an investigation against plaintiff, which plaintiff alleged was conducted in a procedurally deficient, unfair, and discriminatory manner, was not enough to establish malice for the purposes of a tortious interference claim. *Id.* The court held that the allegations regarding the allegedly deficient investigation were too conclusory "to allege plausibly that there was an actionable improper motive behind [defendant's] actions, and more specifically, that said motive was unrelated to a legitimate corporate interest." *Id.* (citation omitted). Here, Defendant Roderick had a legitimate corporate interest in investigating the complaints against Plaintiff, and Plaintiff does not offer any other facts with respect to Defendant Roderick that establishes malice or spite toward Plaintiff in conducting such an investigation. As with Defendant Mikell, there is no evidence that Defendant Roderick falsified, fabricated, or exaggerated any of the investigation's findings.

Finally, Defendants' tortious interference claim against Defendant Draper fails for the same reasons explained above in Section III.A and Section III.B. Plaintiff alleges that "Defendant Draper acted with malice and/or improper motive in his imposition of disparate discipline against Ms. Merrill compared to others outside her protected classes, and in so doing, interfered with her advantageous business relationships with Defendants WBZ, CBS and Paramount." [Doc. No. 1 at ¶ 117]. I have already explained why Plaintiff's claims of disparate treatment with respect to gender are insufficient, and why Defendant Draper's conduct does not amount to malice. That Plaintiff may disagree with Draper's decision to demote her and to announce that demotion to the staff does not equate to Draper "acting out of actual malice as opposed to a perhaps mistaken assessment of his employer's best interest, or even out of personal antipathy." *Luciano v. Coca-Cola Enters., Inc.*, 307 F. Supp. 2d 308, 324 (D. Mass. 2004) (dismissing tortious interference

claim and finding that a disagreement over an investigation's findings "cannot possibly amount to malice.").[4]

    For these reasons, Plaintiff's tortious interference claim is dismissed.

## IV.  CONCLUSION

    For the foregoing reasons, Defendants' Motion to Dismiss, [Doc. No. 8], is <u>GRANTED</u>. Counts I, IV, and V are hereby dismissed. Defendants WBZ, CBS, Paramount, Draper, and Roderick shall file an Answer to the remaining Counts in the Complaint within fourteen days.


SO ORDERED.

<u>/s/ Myong J. Joun</u>
United States District Judge

---

[4] Because I find that the complaint fails to state a claim for tortious interference, I need not reach the parties' remaining arguments regarding the collective bargaining agreement or Merrill's failure to name Mikell as a respondent to her MCAD charge.